# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pasquale Leo Capizzi :
:
        v. : No. 315 C.D. 2015
: Submitted: April 29, 2016
Commonwealth of Pennsylvania, :
Department of Transportation, :
Bureau of Driver Licensing, :
                Appellant :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge


OPINION BY
JUDGE COHN JUBELIRER          FILED: June 23, 2016

The Pennsylvania Department of Transportation, Bureau of Driver Licensing (Department), appeals from the February 12, 2015 Order of the Court of Common Pleas of Allegheny County (common pleas) that sustained Pasquale Leo Capizzi's (Capizzi) statutory appeal of a six-month suspension of his operating privilege pursuant to Section 1532(c)(1)(i) of the Vehicle Code (Code), 75 Pa. C.S. § 1532(c)(1)(i),[1] imposed by the Department on November 24, 2014. Capizzi was

---

[1] **§ 1532. Suspension of operating privilege.**

                          \* \* \*

     **(c)** *Suspension.--*

The department shall suspend the operating privilege of any person upon receiving a certified record of the person's conviction of any offense involving the

*(Continued…)*

convicted on January 26, 2007 of violating Section 13(a)(12) of the Controlled Substance, Drug, Device and Cosmetic Act (Drug Act), 35 P.S. § 780-113(a)(12),[2] by the Court of Common Pleas of Beaver County. However, the Beaver County Clerk of Courts did not certify the conviction and transmit it to the Department until November 14, 2014. The Department mailed notice of his suspension to Capizzi on November 24, 2014, seven years and ten months after the conviction giving rise to the operating privilege suspension. Consistent with our recent decision in Gingrich v. Department of Transp., Bureau of Driver Licensing, 134 A.3d 528 (Pa. Cmwlth. 2016), the extraordinary delay in reporting Capizzi's 2007

---

possession, sale, delivery, offering for sale, holding for sale or giving away of any controlled substance under the laws of the United States . . . .

   **(1)** The period of suspension shall be as follows:

      **(i)** For a first offense, a period of six months from the date of the suspension.

* * * *

Id.

[2] Act of April 14, 1972, P.L. 233, § 13.
**Prohibited acts; penalties.**

**(a)** The following acts and the causing thereof within the Commonwealth are hereby prohibited:

* * *

   **(12)** The acquisition or obtaining of possession of a controlled substance by misrepresentation, fraud, forgery, deception or subterfuge.

* * * *

Id.

conviction that resulted in a gap of nearly eight years between his conviction and 2014 suspension, combined with his lack of additional convictions and his showing of prejudice, has created a circumstance where the 2014 suspension has lost the underlying public safety purpose and now simply is a punitive measure sought to be imposed too long after the fact. For these reasons, we affirm the well-reasoned decision of common pleas.[3]

The facts are straightforward. Capizzi was convicted of violating Section 13(a)(12) of the Drug Act (relating to acquisition or obtaining of possession of a controlled substance by misrepresentation, fraud, forgery, deception, or subterfuge) on January 26, 2007. (R.R. at 5a.) Following receipt of the certification of conviction, the Department informed Capizzi by official notice with a "Mail Date" of November 24, 2014, that his operating privilege was being suspended for a period of six months effective December 29, 2014, as a consequence of his conviction. (R.R. at 8a-11a.) Capizzi filed a timely appeal of this suspension in common pleas on December 3, 2014.

Common pleas held a hearing on February 12, 2015. The Department offered into evidence a package of certified documents (R.R.14a-15a). The package includes the certification of Capizzi's 2007 conviction showing that it was electronically transmitted to the Department on November 14, 2014, and Capizzi's certified driving history. (R.R. at 48a-53a.) The Department then rested. (R.R. at 15a).

Capizzi took the stand and agreed that "the information contained in that notice [of suspension] citing when the offense occurred, the actual offense and the

---

[3] The Honorable Robert C. Gallo, Senior Judge of the Court of Common Pleas of Allegheny County, presided over Capizzi's hearing and authored the opinion.

conviction date" was accurate. (R.R. at 21a). He testified that he believed his sentence for the Drug Act conviction "was two years of house arrest, three years of probation consecutive, to follow." (R.R. at 21a.) Capizzi also testified that he had satisfied the penalty imposed by the criminal court in "September 2009, which would have been two years after [his] sentence was imposed." (R.R. at 22a.)

In response to a question from his counsel as to whether he was aware that his operating privilege could be suspended for his 2007 Drug Act conviction, Capizzi responded that "[o]n the date of trial my attorney notified me it would be possible, it could happen within six months to a year." (R.R. at 22a.) He testified further that when he did not receive a notice of suspension he thought "the suspension was never going to happen." (R.R. at 23a).

As to his current employment, Capizzi testified that he became a "[l]ot manager for PPG Parking" in July, 2009. (R.R. at 24a.) He testified that he is required to "valet cars, the lots, take keys, I'm in charge of snow plow removal, salting, lot maintenance and basically take care of the fleet." (Id.) Capizzi testified that he probably would not have taken this job if he had known that he was going to lose his driver's license, and that he cannot perform his duties without a driver's license. (Id.)

The Department's counsel agreed that Capizzi had established prejudice due to the delay in imposing the suspension. (R.R. at 27a.) Capizzi's counsel agreed that the Department had acted in a timely fashion once it received the report of Capizzi's conviction. (Id.) Common pleas took the matter under advisement and entered its Order sustaining Capizzi's appeal on February 12, 2015.

The Department appealed and common pleas directed the filing of a Concise Statement of Errors Complained of on Appeal (Statement) pursuant to

4

Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 1925(b).[4] Relevant to this appeal, the Department alleged in its Statement that common pleas erred when it concluded that the prejudice sustained by Capizzi as a result of the seven year, ten month delay by the Beaver County Clerk of Courts in reporting Capizzi's January 26, 2007 conviction to the Department warranted vacating the six month operating privilege suspension. (R.R. at 66a-67a.)

Common pleas issued its Opinion in support of the February 12, 2015 Order on April 27, 2015, and described the "sole issue" before it as "whether [Capizzi] should be subject to a license suspension arising out of his January 26, 2007 conviction after a 7 year and 10 month delay, attributable to the judicial system rather than the Department, which resulted in prejudice to [Capizzi]." (R.R. at 79a.) Common pleas noted that "there was no evidence produced regarding any reason for the delay by the Clerk of Courts in transmitting the record to the Department" and that the Department "acted promptly upon receipt of the transmission." (Id.)

As to Capizzi, common pleas summarized the evidence at hearing as follows:

---

[4] Pa.R.A.P. 1925(b) provides as follows:

**Rule 1925. Opinion in Support of Order.**

\* \* \*

**(b) Direction to file statement of errors complained of on appeal; instructions to the appellant and the trial court.--**If the judge entering the order giving rise to the notice of appeal ("judge") desires clarification of the errors complained of on appeal, the judge may enter an order directing the appellant to file of record in the trial court and serve on the judge a concise statement of the errors complained of on appeal ("Statement").

Id.

[Capizzi] testified that his attorney at the time of his trial in 2007 had advised him that if the Department was going to suspend his license, it would occur within six months to a year. (Hearing Transcript, 2/12/15, hereinafter "Tr.["]), p.10). [Capizzi's] penalty was satisfied on September 21, 2009, and a motion to destroy the evidence was granted on May 26, 2010.

In July, 2009, approximately two and a half years following his conviction and shortly before completion of his probation, [Capizzi] obtained new employment where he remains presently employed as a lot manager for PPG Parking. (T[r].11-12). His job requires him to drive because he moves cars for valet parking and oversees snow removal, salting, lot maintenance and takes care of a fleet of vehicles. (Tr. 12). He testified that he would not have taken this job if he had known his license would later be suspended and he cannot perform his job without a driver's license. (Tr. 12-13).

(R.R. at 79a.)

Common pleas then noted that it was "fully aware of the long line of cases holding that in order to sustain an appeal on the basis of unreasonable delay, the delay must be chargeable to the Department and the licensee must demonstrate prejudice resulting to the licensee by reinstating the delayed suspension" and that "[w]hen responsibility lies within the court system, no relief is granted to the licensee." (R.R. at 80a.) In comparing those decisions to the facts of this case, common pleas noted further that "[i]n each of [those] cases, however, the delay caused by the judicial system was significantly shorter than the delay in [Capizzi's case]" and that "[n]one were as egregious as the delay at issue here." (Id.) Finally, as to Capizzi, common pleas held that "[h]ere, the delay caused by the Clerk of Courts clearly resulted in prejudice to [Capizzi]" finding that "[Capizzi] secured employment as lot manager two years after his conviction when he reasonably believed that his license was not subject to suspension." (Id.)

Based upon this rationale, common pleas concluded that:

6

The duty of the clerk of courts to timely report convictions for violations of The Drug Act is addressed in the Motor Vehicle Code, 75 Pa.[]C.S.[] [§] 6323, which provides that the clerk of any court of this Commonwealth, shall send to the [D]epartment a record of the judgment of conviction of charges under Section 13 of the Drug Act within ten days after final judgment of conviction. 75 Pa.[]C.S.[] [§] 6323(1)(i).

Compliance with the statutory provision promotes, the orderly administration of appropriate and timely license suspensions. The within situation is so far removed from the terms of the statute and its goal, that further discussion of the statute is unnecessary.

To sustain this particular license suspension where the delay was not caused by the Department but by the office of the clerk of courts but would result in prejudice to [Capizzi] would be an unfair and unreasonable result in this case. Moreover, it does not further the goal of the Pennsylvania Motor Vehicle Code to maintain safety on public roads, when the suspension will take place almost eight years after [Capizzi's] conviction. Such a decision tends to undermine the public's confidence and trust in the judicial system and frustrate the reasonable expectations of the public that the courts treat defendants in a timely, fair and consistent manner.

(R.R. at 80a-81a.)

On appeal,[5] the Department argues that it is not responsible for any delay in providing notice of a conviction caused by another entity. It notes that here the Beaver County Clerk of Courts was responsible for notifying the Department of Capizzi's Drug Act conviction in a timely manner in accordance with 75 Pa. C.S. §6323. The Department further notes that it exercises no control over the clerks of

---

[5] Our review is limited to determining whether the trial court's findings were supported by competent evidence, whether errors of law were committed, or whether the trial court's determinations demonstrated a manifest abuse of discretion. Dep't of Transp., Bureau of Traffic Safety v. O'Connell, 555 A.2d 873, 875 (Pa. 1989).

courts and could not do so without violating the separation of powers doctrine. Common pleas, therefore, was not able to forgive Capizzi's suspension.[6]

The Department points out that the case law provides that a licensee seeking to avoid an otherwise valid and mandatory operating privilege suspension on the basis of delay has a two-part burden of proof: (1) that an unreasonable delay chargeable to the Department led licensee into reasonably believing that his or her operating privilege would not be impaired; and (2) that prejudice to licensee would result from having the operating privilege suspended after such a delay. Dep't of Transp., Bureau of Driver Licensing v. Gombocz, 909 A.2d 798, 800-801 (Pa. 2006). When challenged, the Department bears the burden of proof as to when it received the report of the conviction leading to the imposition of a suspension. Grover v. Dep't of Transp., Bureau of Driver Licensing, 734 A.2d 941, 943 (Pa. Cmwlth. 1999).

There is no dispute that the Department acted promptly in this matter when it mailed Capizzi's notice of the suspension of his driving privilege within ten days of receipt from the Beaver County Clerk of Courts. There also is no question that Capizzi suffered prejudice from the extraordinary delay. The question therefore is whether the seven-year and ten-month delay by the Beaver County Clerk of Courts provides a basis to overturn the Department's suspension of Capizzi's operating privilege where the Department acted in accord with its statutory mandate.

_____

[6] Capizzi did not file a brief as appellee in this Court, notwithstanding our August 24, 2015 Order directing that he file and serve his brief within 14 days. By Order dated September 25, 2015, this Court precluded Capizzi from filing a brief or participating in oral argument and directed that this matter be submitted on the Department's brief only without argument unless otherwise ordered. Capizzi's decision to not file a brief as appellee is not necessarily fatal to his appeal. See, e.g., Clark v. Dep't of Transp., Bureau of Driver Licensing, 62 A.3d 1059, 1060 (Pa. Cmwlth. 2013).

8

Until recently, this Court has adhered to a line of decisions holding that the Department cannot be held accountable for delays caused by the clerks of courts regardless of the length of time involved. See, e.g. Gombocz, 909 A.2d at 800-801; Terraciano v. Dep't of Transp., Bureau of Driver Licensing, 753 A.2d 233, 236 (Pa. 2000); Dep't of Transp., Bureau of Driver Licensing v. Green, 546 A.2d 767, 768-69 (Pa. Cmwlth. 1988), aff'd per curiam, 569 A.2d 350 (Pa. 1990). However, in Gingrich, we held that under specific circumstances, such as those present in that case, it may be appropriate for common pleas to grant relief in an appeal from a suspension resulting from a conviction for driving under the influence (DUI).

That Gingrich's suspension was the result of a DUI conviction and Capizzi's stemmed from a Drug Act conviction does not alter the result here. In both instances the Department is required to suspend the operating privilege of the person convicted upon receipt of notice of the conviction. A lengthy delay in reporting a conviction may result in prejudice and create a circumstance where the resulting suspension has lost the underlying public safety purpose and now simply is a punitive measure sought to be imposed too long after the fact, regardless of the underlying violation.

The facts in Gingrich were as follows: On October 24, 2014, the Department imposed a one-year suspension of Gingrich's operating privilege as a consequence of receiving a report transmitted on October 10, 2014, that Gingrich had been convicted on August 24, *2004,* of violating 75 Pa. C.S. §3802(a)(1) (relating to DUI-general impairment). Gingrich timely appealed to the court of common pleas. Gingrich, 134 A.3d at 529.

The record before the court showed that Gingrich was arrested for DUI in York County in May, 2004 and subsequently convicted. Gingrich committed another DUI violation in Cumberland County in 2006 and again lost her driving privilege. She also received a suspension for a chemical test refusal. The Department returned her operating privilege on February 16, 2010, subject to the requirement to install an ignition interlock which Gingrich duly installed. She renewed her operating privilege on October 25, 2013. Id. at 529-30.

Gingrich earned an associate's degree and a bachelor's degree and was married in 2012. She testified at her hearing that if she had known that her operating privilege still was subject to suspension for the 2004 conviction it might have affected her decision to get married. She also testified that she drives her five-year old daughter to school, and stated that if she had known a suspension was still possible, it would have affected the decision about which school her daughter would attend. Id. at 530. In addition, after her last suspension Gingrich obtained a job as an inspector for the United States Department of Agriculture that required her to drive to farms in order to inspect processing plants. She testified that if she lost her operating privilege she most likely would lose her job. Id.

Common pleas dismissed Gingrich's appeal and reinstated the suspension because the nearly ten-year delay between conviction and suspension was not attributable to the Department. In its Order and the accompanying Opinion, the court found that the delay of up to ten years in submitting the conviction report to the Department was "truly unconscionable." Id. The court wrote that under the circumstances presented that this Court "may choose to clarify, if not modify, its prior holdings to take into consideration what we would perceive to be a patent denial of due process." Id. Gingrich appealed to this Court.

10

Gingrich argued on appeal that common pleas erred by reinstating her suspension where she showed that she was prejudiced by the nearly ten-year delay in the imposition of the operating privilege suspension, and that the extraordinary delay was a denial of due process. Id. The Department did not dispute that Gingrich was prejudiced by the delay caused by the failure to timely forward the report of her conviction, but argued that Gingrich did not show that the delay was attributable to the Department as required by our previous decisions. Id.

After a lengthy recitation of the prevailing case law, we observed in Gingrich that "[i]t thus is well established that only delays attributable to the Department may constitute cause to invalidate a suspension imposed pursuant to 75 Pa. C.S. § 1532(c)." Id. at 534. Specifically as to Gingrich, we then stated:

> As noted above, the requirement that the delay be attributable to the Department before it may be actionable lies in the differing responsibilities of the judicial and executive branches and serves an important public safety purpose, and we emphasize that this remains the general rule. That said, however, we have concluded that there may be limited extraordinary circumstances where the suspension loses its public protection rationale and simply becomes an additional punitive measure resulting from the conviction, but imposed long after the fact. Where a conviction is not reported for an extraordinarily extended period of time, the licensee has a lack of further violations for a significant number of years before the report is finally sent, and is able to demonstrate prejudice, it may be appropriate for common pleas to grant relief.
>
> Here, the record shows that Gingrich's 2004 conviction was not reported for nearly ten years. While we will not establish a bright line in which a delay becomes extraordinary, we conclude that the delay here meets that standard. The record further shows that Gingrich's license was suspended due to her 2006 conviction and subsequently reinstated in 2010, that she installed an ignition interlock on her vehicle, and that she renewed her license in 2013. Since her last brush with the law, Gingrich has earned an associate's and a bachelor's degree, married, and obtained employment as an inspector with the

11

United States Department of Agriculture that requires her to drive to various farms to perform her inspections. She also has a five-year-old daughter whom she drives to school. She testified credibly that the additional suspension here at issue, had she known about it over the period since her license was reinstated, would have impacted her decisions regarding marriage and where her daughter attends school, and that if the suspension is not vacated, she likely will lose her job. As we noted earlier, the Department does not dispute that Gingrich met her burden to show prejudice.

Based on the record before common pleas, we conclude that the extraordinary delay in reporting Gingrich's 2004 conviction that resulted in a gap of ten years between her conviction and 2014 suspension, combined with her lack of additional issues since her last conviction in 2006 and her showing of prejudice, has created a circumstance where the 2004 suspension has lost the underlying public safety purpose and now simply is a punitive measure sought to be imposed too long after the fact. We reiterate that the general rule remains that only delays attributable to the Department may be vacated. However, where, as here, a licensee is able to demonstrate all of the following: a conviction that is not reported for an extraordinarily extended period of time[]; the licensee has a lack of further issues for an extended period; and prejudice, it may be appropriate for common pleas to grant relief. As we find that the record demonstrates the limited extraordinary circumstances outlined above, we will grant the requested relief.

Id. at 534-35 (footnote omitted). On that basis we reversed common pleas and ordered the Department to vacate Gingrich's suspension.

As in Gingrich, the Department does not dispute that Capizzi met his burden to show that he was prejudiced by the seven-year and ten-month delay between his conviction and the report from the Beaver County Clerk of Courts that triggered the Department's suspension notice. Capizzi testified that he became a "[l]ot manager for PPG Parking" in July, 2009. (R.R. at 24a.) He testified that he is required to "valet cars, the lots, take keys, I'm in charge of snow plow removal, salting, lot maintenance and basically take care of the fleet." (Id.) Capizzi testified

12

that he probably would not have taken this job if he had known that he was going to lose his driver's license, and that he cannot perform his duties without a driver's license. (Id.)

In addition, Capizzi's certified driving record is part of the package of documents admitted into evidence to satisfy the Department's burden before common pleas. Our review of that record shows that Capizzi's operating privilege was suspended in 2007 for violations unrelated to his Drug Act conviction and was restored in 2009. (R.R. at 50a-51a.) Since that time there are no entries on his driving record save the suspension here at issue. (Id.) In sum, Capizzi's operating privilege was suspended seven years and ten months after he was convicted of violating the Drug Act. He satisfied his sentence in 2009 and a motion to destroy the evidence was granted in 2010. Capizzi in 2009 took a job as a parking lot manager that requires him to have a operating privilege in order to perform the functions of the job. His operating privilege was restored from a previous suspension in 2009 and there is no indication of any subsequent violations.

In Gingrich, we declined to establish a bright line as to what constitutes an extraordinarily extended period of time, but concluded that the nearly ten-year delay in that matter met the test. We concluded the nearly ten-year delay "has created a circumstance where the 2004 suspension has lost the underlying public safety purpose and now simply is a punitive measure sought to be imposed too long after the fact." Gingrich, 134 A.3d at 535. After a careful review of the record in this matter we reach the same conclusion. Given the specific circumstances here, we agree with common pleas that suspending Capizzi's operating privilege at this point "does not further the goal of the Pennsylvania Motor Vehicle Code to maintain safety on public roads." (R.R. at 81a.)

13

As we did in <u>Gingrich</u>, we emphasize that the general rule remains that only delays attributable to the Department may be vacated. However, where a licensee demonstrates that his conviction was not reported for an extraordinarily extended period of time; he had a clean record for an extended period; and will suffer prejudice, it may be appropriate for common pleas to grant relief. Because we find that the record demonstrates these limited extraordinary circumstances, we will affirm common pleas' February 12, 2015 Order.

_____
**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Pasquale Leo Capizzi | : | |
| | : | |
| v. | : | No. 315 C.D. 2015 |
| | : | |
| Commonwealth of Pennsylvania, | : | |
| Department of Transportation, | : | |
| Bureau of Driver Licensing, | : | |
| Appellant | : | |

# **O R D E R**

**NOW**, this 23rd day of June, 2016, the February 12, 2015 Order of the Court of Common Pleas of Allegheny County is AFFIRMED.

_____
**RENÉE COHN JUBELIRER,** Judge