# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Vincent Gifford                    :
                                   :
            v.                     :   No. 386 C.D. 2017
                                   :   Submitted:  August 25, 2017
Commonwealth of Pennsylvania,      :
Department of Transportation,      :
Bureau of Driver Licensing,        :
                    Appellant      :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION BY
JUDGE COHN JUBELIRER                    FILED:  October 24, 2017

The Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (PennDOT) appeals an Order of the Court of Common Pleas of Delaware County (trial court) that sustained the statutory appeal of Vincent Gifford (Licensee) from a one-year suspension of his operating privilege imposed by PennDOT pursuant to Section 3733 of the Vehicle Code (Code), 75 Pa. C.S. § 3733.[1] Because the trial court did not err in holding that Licensee meets the extraordinary

---

[1] This offense is defined to include:

> Any driver of a motor vehicle who willfully fails or refuses to bring his vehicle to a stop, or who otherwise flees or attempts to elude a pursuing police officer, when given a visual and audible signal to bring the vehicle to a stop, commits an offense as graded in subsection (a.2).

75 Pa. C.S. § 3733(a).

circumstances exception set forth in *Gingrich v. Department of Transportation, Bureau of Driver Licensing*, 134 A.3d 528 (Pa. Cmwlth. 2016), we affirm.

The facts are straightforward and not in dispute. On June 6, 2013, Licensee violated Section 3733 of the Code, relating to fleeing or attempting to elude a police officer. On January 10, 2014, Licensee was convicted of this crime by the trial court. On August 8, 2016, the Delaware County Office of Judicial Support (OJS) notified PennDOT of Licensee's January 10, 2014 conviction. PennDOT mailed a Notice of Suspension, pursuant to Section 1532(b) of the Code, 75 Pa. C.S. § 1532(b),[2] to

---

[2] Section 1532(b) of the Code provides that:

Suspension.--
(1) The department shall suspend the operating privilege of any driver for six months upon receiving a certified record of the driver's conviction of or an adjudication of delinquency based on any offense under the following provisions:
   Section 3367 (relating to racing on highways).
   Section 3714(b) (relating to careless driving).
   Section 3734 (relating to driving without lights to avoid identification or arrest).
   Section 3736 (relating to reckless driving).
   Section 3743 (relating to accidents involving damage to attended vehicle or property).
(2) The department shall suspend the operating privilege of any driver for six months upon receiving a certified record of the driver's conviction of a subsequent offense under section 1501(a) (relating to drivers required to be licensed) if the prior offense occurred within five years of the violation date of the subsequent offense.
(3) The department shall suspend the operating privilege of any driver for 12 months upon receiving a certified record of the driver's conviction of section 3733 (relating to fleeing or attempting to elude police officer) or a substantially similar offense reported to the department under Article III of section 1581 (relating to Driver's License Compact[, 75 Pa. C.S. § 1581]), or an adjudication of delinquency based on section 3733. The department shall suspend the operating privilege of any driver for six months upon receiving a certified record of a consent decree granted under 42 Pa. C.S. Ch. 63 (relating to juvenile matters) based on section 3733.

2

Licensee on August 16, 2016. The Notice of Suspension stated that Licensee's operating privilege was suspended for a period of one year effective on September 20, 2016. Licensee timely filed a License Suspension Appeal in the trial court on September 1, 2016.

On November 15, 2016, the trial court held a *de novo* hearing on Licensee's appeal, at which PennDOT presented Licensee's Certified Driving Record, and Licensee was given an opportunity to testify. At this hearing, Licensee did not dispute the January 10, 2014 conviction but testified that he had reformed in the nearly two-year and seven-month period since the conviction. Since the June 6, 2013 violation, Licensee has not had any further violations or convictions. Licensee stated that he is currently employed at 3J's, a tire business located in Swarthmore, Pennsylvania, where he delivers tires six days a week throughout Pennsylvania. Licensee explained that 90% of his workday involves driving and that he began his employment at 3J's in approximately early- to mid-2015. Licensee further testified that since being hired at 3J's, he has looked for supplemental work but has been unable to attain an additional job because of his felony conviction from January 10, 2014. Additionally, Licensee stated that no positions are available at his current job

---

(4) The department shall suspend the operating privilege of any driver for three months upon receiving a certified record of the driver's conviction of section 1371 (relating to operation following suspension of registration) or 3718 (relating to minor prohibited from operating with any alcohol in system) or an adjudication of delinquency based on section 1371.

(5) The department shall suspend the operating privilege of any driver for three months upon receiving a certified record of the driver's conviction of or an adjudication of delinquency based on section 3714(c).

75 Pa. C.S. § 1532(b).

that would not require him to possess a driver's license. Licensee indicated that he is not confident that he could find another job if he lost his current job at 3J's.

Licensee resides with his parents, his girlfriend, and his three-year-old daughter. Licensee pays rent and various bills and testified that, even though his girlfriend is employed, his family could not afford to live only on his girlfriend's income. Additionally, Licensee's daughter was born with a seizure condition requiring frequent, unplanned emergency trips to the hospital.[3] Further, Licensee testified that he is the only one who drops his daughter off at day care and that he may be the only one available to drive when she needs to go to the hospital because of her condition.

On March 8, 2017, the trial court sustained the appeal and reinstated Licensee's operating privilege. The trial court reasoned that although the traditional rule is that delays attributable to non-PennDOT entities are insufficient to invalidate a license suspension, a limited exception to this rule was set forth in *Gingrich* that allows a trial court to consider delays attributable to non-PennDOT entities in certain circumstances. (Trial Ct. Op. at 4–5.) In its opinion, the trial court found that the circumstances of this case were analogous to the facts in *Gingrich*. (*Id.* at 6.) PennDOT contended that *Gingrich* was inapplicable because the delay at issue in this case is substantially less than the delay in *Gingrich*. The trial court rejected this argument by distinguishing the precedent relied upon by PennDOT and finding guidance in Section 6323(1)(i) of the Code, 75 Pa. C.S. § 6323(1)(i),[4] which directs

_____

[3] Licensee's daughter was born approximately one month following his January 2014 conviction.

[4] Section 6323(1)(i) of the Code provides that:

The clerk of any court of this Commonwealth, **within ten days** after final judgment of conviction or acquittal or other disposition of charges under any of the provisions

4

OJS to report convictions to PennDOT "within ten days after final judgment of conviction." (*Id.* at 9.) The trial court further concluded that the suspension had lost its public protection rationale and is instead being instituted as an additional punitive measure. (*Id.* at 10.) PennDOT timely appeals.[5]

On appeal, PennDOT argues that the trial court erred in sustaining Licensee's appeal and ordering the reinstatement of Licensee's operating privilege. PennDOT asserts that the trial court erred because, under the traditional rule, a license suspension generally may only be invalidated on the basis of delay when **PennDOT** is responsible for an unreasonable delay and a licensee would suffer prejudice as a result of having his or her operating privilege suspended. To the extent that *Gingrich* created an exception to this traditional rule, PennDOT argues that *Gingrich* does not apply to these circumstances. Specifically, PennDOT asserts that *Gingrich* is inapplicable because the two-year, seven-month delay here does not amount to an "extraordinarily extended period of time." (PennDOT Br. at 19.)

Generally, for a licensee to challenge a license suspension based on delay, the licensee must prove that: "'(1) an unreasonable delay chargeable to PennDOT led the licensee to believe that [his] operating privileges would not be impaired; and (2) prejudice would result by having the operating privileges suspended after such delay.'" *Dep't of Transp., Bureau of Driver Licensing v. Gombocz*, 909 A.2d 798,

---

of this title or under section 13 of the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act, including an adjudication of delinquency or the granting of a consent decree, **shall send** to the department a record of the judgment of conviction, acquittal or other disposition.

75 Pa. C.S. § 6323(1)(i) (emphasis added).

[5] Our review is limited to determining whether the trial court's findings were supported by competent evidence, whether errors of law were committed, or whether the trial court's determination constituted an abuse of discretion. *Reinhart v. Dep't of Transp., Bureau of Driver Licensing*, 954 A.2d 761, 765 n.3 (Pa. Cmwlth. 2008).

800-01 (Pa. 2006) (alteration in original) (quoting *Terraciano v. Dep't of Transp., Bureau of Driver Licensing*, 753 A.2d 233, 236 (Pa. 2000)).  Historically, this Court has only considered the delay that is attributable to PennDOT in determining whether a suspension may be invalidated on the basis of delay.  *See, e.g.*, *Dep't of Transp., Bureau of Driver Licensing v. Green*, 546 A.2d 767, 769 (Pa. Cmwlth. 1988).  In *Green*, we explained the rationale for the traditional rule:

> If [PennDOT] too often failed to meet the responsibility thus focused upon it, the locus of fault would be clear and executive and legislative remedies could be directed at [PennDOT].  But a very different situation would prevail if the effectiveness of the Vehicle Code sanctions became dependent on scores of court clerks and hundreds of functionaries within the minor judiciary.

*Id.*  However, recently, this Court recognized "limited extraordinary circumstances" where a licensee may rely on the delay attributable to entities other than PennDOT by showing that:  (1) the "conviction is not reported for an extraordinarily extended period of time"; (2) "the licensee has a lack of further violations for a significant number of years before the report is finally sent"; and (3) the licensee is prejudiced by the delay.  *Gingrich*, 134 A.3d at 534.  The Court concluded that this narrow exception is applicable "where the suspension loses its public protection rationale and simply becomes an additional punitive measure resulting from the conviction, but imposed long after the fact."  *Id*. at 534.

PennDOT seeks the application of the traditional, non-*Gingrich* rule here.  In the present case, there is no dispute that PennDOT acted promptly[6] once it received Licensee's notice of conviction from the OJS.  Thus, even though the trial court found prejudice under the traditional rule, Licensee would not be entitled to relief.

---

[6] PennDOT acted within eight days of receiving the appropriate documentation from the OJS.

Therefore, in order to obtain the desired relief, Licensee must demonstrate that he meets the three factors of the *Gingrich* standard.

No dispute exists as to whether the second and third factors of the *Gingrich* standard are met in this case. Licensee's Certified Driving Record reveals no additional violations since his January 10, 2014 conviction. Moreover, the trial court found that, based on Licensee's credited testimony, Licensee would be prejudiced by the delay because without his license, he runs the risk of losing his job and source of income to provide for his family, which would be difficult to replace because of his felony conviction, and also would be unable to provide transportation for his daughter's frequent and, at times, emergency, medical treatments. PennDOT does not challenge this finding of prejudice, and prior case law supports the notion that losing a job that requires a driver's license constitutes prejudice.[7] *See Orloff v. Dep't of Transp., Bureau of Driver Licensing*, 912 A.2d 918, 924 (Pa. Cmwlth. 2006).

In addition, Licensee is able to demonstrate further prejudice because of his familial obligations, particularly those requiring the use of his license to ensure his daughter is transported to her necessary and unplanned emergency medical treatments and, if required, to the hospital. For these reasons, the evidence in the record supports the finding that Licensee would be prejudiced from the delay in suspending his license.

The only dispute for the Court to resolve is whether the trial court could find that the nearly two-year, seven-month delay attributable, not to PennDOT, but to the OJS, constitutes an "extraordinarily extended period of time." *Gingrich*, 134 A.3d at 534. In *Gingrich*, the Court did not establish a bright line test for meeting this factor but instead left it for the trial courts to determine on a case-by-case basis. *Id.*

---

[7] Here, this finding is arguably exacerbated because of Licensee's difficulty in obtaining another job due to his felony conviction.

7

at 535 n.7.  Since *Gingrich*, we have affirmed trial court determinations where a delay attributable to non-PennDOT entities, ranging from 7 years and 10 months to 10 years, was found to constitute an "extraordinarily extended period of time."  *See, e.g.*, *Eckenrode v. Dep't of Transp., Bureau of Driver Licensing* (Pa. Cmwlth., No. 168 C.D. 2015, filed July 14, 2016), slip op. at 6 (9 years);[8] *Capizzi v. Dep't of Transp., Bureau of Driver Licensing*, 141 A.3d 635, 643 (Pa. Cmwlth. 2016) (7 years, 10 months); *Orwig v. Dep't of Transp., Bureau of Driver Licensing* (Pa. Cmwlth., No. 286 C.D. 2015, filed June 3, 2016), slip op. at 5-6 (10 years); *Gingrich*, 134 A.3d at 535 (10 years).  In addition, the Court has previously held that the trial court erred in not denying a licensee's appeal where the delay was roughly five months, "which, while not ideal, was certainly not an 'extraordinarily extended period of time.'"  *Nercesian v. Dep't of Transp., Bureau of Driver Licensing* (Pa. Cmwlth., No. 1795 C.D. 2016, filed June 12, 2017), slip op. at 9.  The delay in this case of approximately two years and seven months falls in between time frames that, post-*Gingrich*, have been viewed as not an "extraordinarily extended period of time" and those that were.[9]

Moreover, under Section 6323(1)(i) of the Code, 75 Pa. C.S. § 6323(1)(i), the OJS is directed to send a record of the judgment of conviction to PennDOT "within ten days after a final judgment of conviction."  Although this provision is directory, and not mandatory, it is meant to be followed as closely as a mandatory provision

---

[8] Pursuant to Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a), an unreported opinion filed after January 15, 2008, may be cited for its persuasive value, but not as binding precedent.

[9] While, in dicta, we have questioned whether a three-year delay caused by a non-PennDOT entity would constitute an "extraordinarily extended period of time," we did not further address this issue because the licensee was found to have not been prejudiced by the delay.  *Currie v. Dep't of Transp., Bureau of Driver Licensing*, 142 A.3d 186, 189 n.4 (Pa. Cmwlth. 2016).

with the only difference being that the effect of non-compliance does not render the proceedings illegal and void. *Gingrich*, 134 A.3d at 533.

We examine *Gingrich* and the cases that followed for guidance on the application of *Gingrich*'s three factors. In *Gingrich*, the delay at issue was nearly ten years, and there was significant prejudice because, during that time period, the licensee married, obtained higher education degrees, got a new job that required her to drive, and had a child who attended a school that required the licensee to drive. *Gingrich*, 134 A.3d at 535. Because of the prejudice involved and the long delay, the Court gave less weight to the licensee's subsequent driving violation and suspension and concluded that the license suspension should be reversed. *Id.* The three *Gingrich* factors were also balanced in *Capizzi*, where the delay was long (7 years and 10 months), no further violations were committed by the licensee, and at least some prejudice was shown by the licensee in that he could possibly lose his current job as a valet that required his license. *Capizzi*, 141 A.3d at 643. Although the Court in *Capizzi* found that the prejudice involved and the length of the delay were not as significant as in *Gingrich*, given the absence of additional violations combined with what delay and prejudice there was, we held that the trial court could find that the *Gingrich* exception was met. *Id.*

The *Gingrich* factors were also recently balanced in *Currie v. Department of Transportation, Bureau of Driver Licensing*, 142 A.3d 186, 187 (Pa. Cmwlth. 2016), where the delay caused by a non-PennDOT entity was nearly three years. However, in *Currie*, the licensee was unable to demonstrate any prejudice because for all but three months of the three-year delay, licensee's license was suspended due to a different violation; therefore, we held that the *Gingrich* exception was not met. *Id.* at 189-90.

9

Based on this Court's precedent, the *Gingrich* factors may be weighed differently by the trial court, based on the circumstances of each case, in examining whether the suspension loses its public protection rationale and becomes merely an additional punitive measure. Thus, the length of the delay may be evaluated in the context of the degree of prejudice. Here, the prejudice shown by Licensee is significant and, in the absence of any additional violations, the trial court could find the length of the delay necessary to constitute an "extraordinarily extended period of time" to be shorter than in a different case.

For these reasons, under the circumstances here, the trial court did not err or abuse its discretion when, based on the credited evidence presented in this matter, it held that the *Gingrich* exception was met in this case. As stated in *Gingrich*, this Court does not establish a bright line test for what constitutes an "extraordinarily extended period of time," but instead, it is for the trial courts to determine on a case-by-case basis. *Gingrich*, 134 A.3d at 535 n.7. Thus, we affirm the trial court's determination that two years and seven months can be an "extraordinarily extended period of time" when considered with the other *Gingrich* factors, the prejudice shown by the licensee, and the absence or presence of subsequent violations. We continue to emphasize that the *Gingrich* exception applies only in limited extraordinary circumstances and that the general rule remains that only delays attributable to PennDOT may be grounds for vacating a license suspension based on delay. Because we find the trial court did not err, we will affirm the trial court's March 8, 2017 Order.

_____

**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Vincent Gifford                :

                             :

              v.               :   No. 386 C.D. 2017

                             :

Commonwealth of Pennsylvania,   :

Department of Transportation,    :

Bureau of Driver Licensing,       :

               Appellant   :

## O R D E R

NOW, October 24, 2017, the March 8, 2017 Order of the Court of Common Pleas of Delaware County is **AFFIRMED**.

_____

**RENÉE COHN JUBELIRER,** Judge