IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Luca DeGrossi                  :

                                    :   No. 291 C.D. 2017

          v.              :

                                      :   Submitted: September 29, 2017

Commonwealth of Pennsylvania,  :

Department of Transportation,   :

Bureau of Driver Licensing,     :

                Appellant     :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
              HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION BY
BY JUDGE McCULLOUGH                FILED: November 27, 2017


      The Pennsylvania Department of Transportation, Bureau of Driver Licensing (Department), appeals from the February 15, 2017 order of the Court of Common Pleas of Delaware County (trial court) sustaining the statutory appeal of Luca DeGrossi (Licensee) and vacating a six-month suspension of his operating privilege that the Department imposed pursuant to section 1532(c)(1)(i) of the Vehicle Code (Code).[1]  We affirm.

      On January 28, 2014, Licensee was convicted for possession of a controlled substance.[2]  On August 8, 2016, more than two years later, the Delaware

---

[1] This provision states that the Department shall suspend the operating privilege of any person upon receiving a certified record of the person's conviction of an offense involving the illegal use and/or possession of a controlled substance and provides for a suspension of six months when it is the person's first offense.  75 Pa.C.S. §1532(c)(1)(i).

[2] *See* section 13(a)(16) of The Controlled Substance, Drug, Device, and Cosmetic Act, Act of April 14, 1972, P.L. 233, *as amended,* 35 P.S. §780-113(a)(16).

County Office of Judicial Support (OJS), formerly known as the Clerk of Courts, submitted a DL-21 Form to the Department regarding Licensee's conviction. On August 23, 2016, the Department mailed Licensee official notice that his license was being suspended for a period of six months, effective August 23, 2016. The time gap between the conviction and the notice of suspension was approximately two years and seven months. (Trial court op. at 1-2.)

Licensee filed an appeal to the trial court, contending that his license suspension should be set aside due to unreasonable delay in effectuating the suspension.

At the *de novo* hearing held on December 6, 2016, the Department introduced a certified record containing proof of Licensee's January 28, 2014 conviction, documents that the Department sent to Licensee, and Licensee's driving history. (Reproduced Record (R.R.) at 40a-49a.) Licensee testified that, although he was aware that his conviction would result in a license suspension, he understood that the Department would notify him of the suspension within ten days of the conviction. Licensee explained that since the conviction, he obtained a new job in the real estate industry that requires him to drive to various locations, and that there is no public transportation available from his home to the main office. Licensee stated that, beginning in June 2016, he has been a Big Brother in the Big Brother/Sister Foundation and that he needs his vehicle to take the child he works with on social and recreational outings. Licensee further testified that he needs his vehicle to attend church events and sobriety programs. (R.R. at 20a-37a; Trial court op. at 2-3.)

On February 15, 2017, the trial court sustained the appeal and reinstated Licensee's operating privilege. Relying principally on *Gingrich v. Department of Transportation, Bureau of Driver Licensing*, 134 A.3d 528 (Pa. Cmwlth. 2016) (en

2

banc), the trial court determined that the two year and seven month delay in suspending the license was unreasonable; Licensee did not experience any further violations following his conviction; and Licensee sustained prejudice as a result of the delay. Perceiving our decision in *Gingrich* as one that marked a sea change in the law, the trial court rejected the authority proffered by the Department that pre-dated *Gingrich* as "not dispositive." (Trial court op. at 7.) Ultimately, the trial court concluded that the license suspension was "inherently unfair and ignore[d] the fundamentals of due process" and, hanging its hat on *Gingrich*, reinstated Licensee's driving privilege. (Trial court op. at 11.)

The Department now appeals to this Court,[3, 4] arguing that the trial court erred as a matter of law in extending the holding of *Gingrich* to the facts of this case. The Department emphasizes that the OJS was responsible for the delay and claims that the length of the delay was simply too short to warrant reinstatement, even if Licensee suffered prejudice. For support, the Department cites cases from this Court that preceded *Gingrich*, contending that this decisional law has not been overruled and continues onward as valid, binding precedent.

"Until recently, this Court has adhered to a line of decisions holding that the Department cannot be held accountable for delays caused by the clerks of courts regardless of the length of time involved." *Capizzi v. Department of Transportation,*

---

[3] Our review is limited to determining whether the trial court's findings were supported by competent evidence, whether errors of law were committed, or whether the trial court's determinations demonstrated a manifest abuse of discretion. *Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 555 A.2d 873, 875 (Pa. 1989).

[4] On August 14, 2017, this Court ordered Licensee to file an appellate brief within fourteen days. Licensee did not, and we entered an order on September 25, 2017, precluding him from doing so.

3

*Bureau of Driver Licensing*, 141 A.3d 635, 640 (Pa. Cmwlth. 2016).[5] While the general rule remains that the delay must be attributable to the Department to warrant setting aside a license suspension, this Court in *Gingrich* recognized a narrow exception for

[5] The rationale for this rule was described in *Department of Transportation, Bureau of Driver Licensing v. Green*, 546 A.2d 767 (Pa. Cmwlth. 1988), as follows:

> Although, paraphrasing Ralph Waldo Emerson, a foolish consistency may be the hobgoblin of little minds, this court can do no better than to adhere to the steady line of decisions in which we have held that, where [the Department] has not been guilty of administrative delay, judicial system delay in notifying [the Department] will not operate to invalidate driver's license suspensions merited by Vehicle Code convictions . . . .
>
> The principle steadfastly applied in these decisions is consistent with sound policy. Under the Vehicle Code, [the Department] is the agency made responsible for imposition of the sanctions which the law uses to keep unsafe drivers off the highways for stated periods. This court has held that a material breach by [the Department] of that responsibility will invalidate the legal effectiveness of the sanction. If [the Department] too often failed to meet the responsibility thus focused upon it, the locus of fault would be clear and executive and legislative remedies could be directed at [the Department]. But a very different situation would prevail if the effectiveness of the Vehicle Code sanctions became dependent upon scores of court clerks and hundreds of functionaries within the minor judiciary. This court's rule therefore protects the vehicle safety laws from vulnerability to delays within a system where detection and correction of official failure would be much more difficult.

*Id.* at 768-69 (citations omitted). Notably, this Court devised the rule despite the fact that the Vehicle Code imposed a duty on the clerk of courts to send a record of the conviction to the Department within ten days of the conviction. *See* section 6323(1)(i) of the Code, 75 Pa.C.S. §6323(1)(i). We reasoned that the statutory provision requiring the court clerk to certify convictions to the Department within ten days was directory and not mandatory, and that a court clerk's lateness could not nullify the Department's power and duty to suspend the driving privilege of a person convicted of an enumerated offense. *Department of Transportation, Bureau of Driver Licensing v. Claypool*, 618 A.2d 1231, 1232-33 (Pa. Cmwlth. 1992).

what we called "limited extraordinary circumstances." 134 A.3d at 534-35.[6] In *Gingrich*, we held that even where the Department was not responsible for the delay, a licensee could still have his or her license reinstated upon proof that: (1) the entity responsible for certifying a conviction to the Department failed to do so for an extraordinary extended period of time; (2) the licensee had no further Vehicle Code violations for a significant number of years before the conviction was certified to the Department; and (3) the licensee was prejudiced by the delay. *Id.*

In this case, the Department does not dispute that Licensee has met the second and third prongs of the *Gingrich* test, and its challenge is solely to the trial court's application of the first prong. In *Gingrich*, this Court held that a ten-year delay between the conviction and notice of suspension, which was attributable to the clerk of courts, constituted an extraordinarily extended period of time. 134 A.3d at 534-35 ("Here, the record shows that [the licensee's] conviction was not reported for nearly ten years. While we will not establish a bright line in which a delay becomes extraordinary, we conclude that the delay here meets that standard.").[7] Later, in

---

[6] In *Gingrich*, we justified the exception with this language:

> [T]he requirement that the delay be attributable to the Department before it may be actionable lies in the differing responsibilities of the judicial and executive branches and serves an important public safety purpose, and we emphasize that this remains the general rule. That said, however, we have concluded that there may be limited extraordinary circumstances where the suspension loses its public protection rationale and simply becomes an additional punitive measure resulting from the conviction, but imposed long after the fact.

134 A.3d at 534.

[7] *Accord Orwig v. Department of Transportation, Bureau of Driver Licensing*, (Pa. Cmwlth., No. 286 C.D. 2015, filed June 3, 2016) (unreported) (applying the *Gingrich* exception where ten years elapsed between the conviction and the clerk of court's reporting of the conviction to the Department); *see Eckenrode v. Department of Transportation, Bureau of Driver Licensing*, (Pa. Cmwlth., No. 168

*Capizzi*, we determined that a delay of seven years and ten months, which was chargeable to the clerk of courts, also satisfied this standard. 141 A.3d at 643 (concluding that "the seven-year and ten-month delay between his conviction and the report from the Beaver County Clerk of Courts . . . constitutes an extraordinarily extended period of time.").

However, in *Pokoy v. Department of Transportation, Bureau of Driver Licensing*, 714 A.2d 1162 (Pa. Cmwlth. 1998), this Court concluded that a four-year delay, again attributable to the clerk of courts, was insufficient to set aside the license suspension. *Id.* at 1164 ("[O]nly an unreasonable delay by [the Department], and not the judicial system, invalidates [the Department's] license suspension . . . . Because the four year delay is not attributable to [the Department] we need not reach the issue of whether [the licensee] suffered any prejudice."). Previously, we reached the same result in *Schultz v. Department of Transportation*, 488 A.2d 408 (Pa. Cmwlth. 1985) (upholding license suspension where the four-year delay was attributable to the clerk of courts). The basis for the holdings in *Pokoy* and *Schultz* was the fact that the Department was not responsible for the delay.

In this case, the Department seeks to invoke *Pokoy* as dispositive authority. Recently, a panel of this Court, albeit in an unpublished decision, has determined that, notwithstanding *Gingrich* and its newborn progeny, "*Pokoy* remains good law." *Eckenrode v. Department of Transportation, Bureau of Driver Licensing*,

---

C.D. 2015, filed July 14, 2016) (unreported) (same; nine years); *cf. Nercesian v. Department of Transportation, Bureau of Driver Licensing*, (Pa. Cmwlth., No. 1795 C.D. 2016, filed June 12, 2017) (unreported), slip op. at 9 (concluding that a license was properly suspended under *Gingrich* where the delay was roughly five months, "which, while not ideal, was certainly not an 'extraordinarily extended period of time.'").

(Pa. Cmwlth., No. 168 C.D. 2015, filed July 14, 2016) (unreported), slip op. at 4.[8]  And, in *Currie v. Department of Transportation, Bureau of Driver Licensing*, 142 A.3d 186, 189 n.4 (Pa. Cmwlth. 2016), we doubted "whether the Records Department's failure to report Licensee's conviction to [the Department] for three years constitutes an 'extraordinarily extended period of time' under *Gingrich.*" *Currie*, 142 A.3d at 189 n.4. However, our statement in *Currie* was a gratuitous observation, otherwise known as *dicta*, because it was not essential to our holding.  *See id.* ("[B]ecause we find that Licensee was not prejudiced by the delay, we need not reach this question.").

It is well-settled that unpublished decisions from this Court are not binding, *see Duke Energy Fayette II, LLC v. Fayette County Board of Assessment Appeals*, 116 A.3d 1176, 1182 (Pa. Cmwlth. 2015), and neither is *dicta*.  *Rendell v. Pennsylvania State Ethics Commission*, 983 A.2d 708, 714 (Pa. 2009).  Nonetheless, *Pokoy* is a published decision, and because the fact pattern in that case is analogous to the instant matter, this Court, sitting as three-judge panel, is bound to follow and apply the outcome of *Pokoy*.  This is true, unless, of course, there is intervening precedent compelling a different result than the one we reached in *Pokoy*.

Our latest pronouncement on *Gingrich* came from a published decision filed on October 24, 2017, *Gifford v. Department of Transportation, Bureau of Driver Licensing*, __ A.3d __ (Pa. Cmwlth., No. 386 C.D. 2017, filed October 24, 2017).[9]  In that case, the licensee became a delivery driver for a tire business after his conviction, and the clerk of courts delayed in informing the Department of the conviction for two years and seven months.  On appeal, the Department did not challenge the trial court's

---

[8] In *Gingrich*, this Court cited and discussed *Pokoy*, *see* 134 A.3d at 532, but there does not appear to be anything in the text of *Gingrich* to suggest that we were expressly overruling that case.

[9] Although the trial court in this case did not have the benefit of our decision in *Gifford*, the same trial judge presided over both this case and *Gifford*, the Honorable Kathrynann Durham.

finding that the licensee did not incur any violations since his conviction. Nor did the Department dispute that the licensee sustained prejudice as a result of the delay, yet we reiterated that "prior case law supports the notion that losing a job that requires a driver's license constitutes prejudice." Slip op. at 7 (citation omitted).

This Court next determined that, under *Gingrich*, "the length of the delay may be evaluated in the context of the degree of prejudice." *Id.* at 10. Having decided that the amount of prejudice shown by the licensee, *i.e.*, the potential loss of employment and inability to take his daughter to hospital visits, was "significant," we concluded that the trial court possessed the discretion to decide when the length of the delay constituted an "extraordinarily extended period of time." *Id.* Emphasizing that *Gingrich* did not establish a bright line test in this regard, we affirmed "the trial court's determination that two years and seven months [was] an 'extraordinarily extended period of time' when considered with the other *Gingrich* factors, the prejudice shown by the licensee, and the absence or presence of subsequent violations." *Gifford*, __ A.3d at __, slip op. at 10.

In *Gifford*, this Court intermingled the length of the delay with the particular "degree of prejudice shown," ultimately clarifying a test where the "three *Gingrich* factors [are] balanced." *Id.* at 9-10; *see id.* at 10 ("[T]he *Gingrich* factors may be weighed differently by the trial court, based on the circumstances of each case, in examining whether the suspension loses its public protection rationale and becomes merely an additional punitive measure."). As in *Gifford*, the Department here does not challenge the trial court's finding that Licensee sustained prejudice. We nevertheless note that, similar to the licensee in *Gifford*, Licensee's new job requires that he have a license to travel and view properties, his job would be in jeopardy if he did not have a license, and he relies on his vehicle to attend sobriety and volunteer programs.

8

Moreover, just as it did in *Gifford*, the Department in this case does not take issue with the trial court's finding that Licensee did not sustain any vehicular or criminal violations following his conviction. Consequently, regardless of whether *Gifford* overruled *Pokoy sub silentio* or circumscribed that case to the situation where a licensee does not experience demonstrable prejudice (or only minimal prejudice), *Gifford* is factually indistinguishable and the controlling authority in this matter. Therefore, because the delay of two years and seven months was enough in *Gifford*, it must be enough in this case, where the delay was also two years and seven months. We conclude, therefore, that the trial court did not err in finding that the delay was for an extraordinarily extended period of time under *Gingrich*.

In making its determination, the trial court construed the exception in *Gingrich* as one that effectively swallowed the previous rule and abrogated all of this Court's preexisting case law. With our decision in *Gifford*, this could quite possibly be the case, for it is difficult to decipher how the "general rule" remains intact despite sentiments from this Court to that effect. *See Gifford*, slip op. at 10 ("We continue to emphasize that the *Gingrich* exception applies only in limited extraordinary circumstances and that the general rule remains that only delays attributable to [the Department] may be grounds for vacating a license suspension based on delay."); *Capizzi*, 141 A.3d at 643 ("[W]e emphasize that the general rule remains that only delays attributable to the Department may be vacated."); *Gingrich*, 134 A.3d at 534 ("[T]he requirement that the delay be attributable to the Department before it may be actionable lies in the differing responsibilities of the judicial and executive branches and serves an important public safety purpose, and we emphasize that this remains the general rule."). Whether the entire body of our case law comprising the *ancien regime* is still viable post-*Gingrich*, be it as a practical matter or a legal one, is a question that

9

we need not – and do not – decide today. For example, this Court has upheld license suspensions where the delay attributable to the judicial system was two years and four months, *Department of Transportation, Bureau of Traffic Safety v. Kazil*, 510 A.2d 148 (Pa. Cmwlth. 1986), two years and three months, *Department of Transportation, Bureau of Traffic Safety v. Chrzanowski*, 505 A.2d 1129, 1130-31 (Pa. Cmwlth. 1986), and one year and five months. *Department of Transportation, Bureau of Traffic Safety v. Davis*, 527 A.2d 607, 609-10 (Pa. Cmwlth. 1987). These cases, however, involved a period of delay that is shorter than the one at bar, and, for present purposes, we will simply distinguish them on that basis.

In any event, given our decision in *Gifford*, it appears that the primary focus in these types of license suspension cases is the prejudice, if any, that a licensee sustains from the delay. We believe that such a focus is warranted, not only by the notion of fundamental fairness inherent in the due process clause, but also by Article I, Section 11 of our Constitution, which commands that "Every man . . . shall have . . . right and justice administered without . . . delay." PA. CONST. article I, §11; *see Exton Drive-In, Inc. v. Home Indemnity Co.*, 261 A.2d 319, 322-23 (Pa. 1969) ("The right to have justice administered without delay is a fundamental right which should not be infringed unless no other course is reasonably possible."); *see also Davis v. South Carolina Department of Motor Vehicles*, 800 S.E.2d 493, 496 (Ct. App. S.C. 2017) ("A person's interest in his driver's license is property that a state may not take away without satisfying the requirements of due process. Due process is violated when a party is denied fundamental fairness.") (citation omitted).[10]

_____

[10] In reaching its conclusion that a delay exceeding two years or more is unreasonable for purposes of due process, the trial court, in our view, effectively impeached the long-standing general rule, positing that "an error by [the Department] should not be viewed differently than an error by the judicial system because the result is the same for the licensee: prejudice." (Trial court op. at 10.) In

10

Because this case is substantially similar to our decision in *Gifford*, we affirm the trial court's order setting aside the suspension of Licensee's driving privilege.

_____
PATRICIA A. McCULLOUGH, Judge

1984, a trial court in Lehigh County, in a decision that does not seem to have been appealed, made a similar argument when overturning a license suspension when there was a four-year delay. *Department of Transportation v. Curzi*, 30 Pa. D.&C.3d 307, 310 (1984):

> Notwithstanding the rule of the Commonwealth Court that delays caused by the judiciary are not to be chargeable to [the Department], we believe that the period of delay between conviction and suspension may become so great that due process requires that the state be prohibited from securing the suspension regardless of the source of delay . . . . [W]e find that notions of fairness and decency, as embodied in the concept of due process, mandate that the state cannot suspend the appellant's license after a four-year period of inaction on its part.

*Id.* at 310. In *In re Petition of Donley*, 618 S.E.2d 458, 461 (W.Va. 2005), the highest court of our sister state, West Virginia, concluded that due process is violated when prejudice results from a delay of nearly three years, even when the department issuing the license suspension is not responsible for the delay. Ultimately, this authority reinforces our decision in *Gifford* and, also, the one we render in this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Luca DeGrossi                                    :
                                                 :    No.  291 C.D. 2017
                          v.                     :
                                                 :
Commonwealth of Pennsylvania,                    :
Department of Transportation,                    :
Bureau of Driver Licensing,                      :
                          Appellant              :

## ***ORDER***

AND NOW, this 27th day of November, 2017, the February 15, 2017 order of the Court of Common Pleas of Delaware County is hereby affirmed.

_____
PATRICIA A. McCULLOUGH, Judge