# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Stephen Middaugh           :
                                  :
            v.             :   No. 815 C.D. 2017
                                  :   Argued: March 7, 2018

Commonwealth of Pennsylvania,  :
Department of Transportation,    :
Bureau of Driver Licensing,      :
                 Appellant  :

BEFORE:    **HONORABLE MARY HANNAH LEAVITT,** President Judge
                **HONORABLE RENÉE COHN JUBELIRER,** Judge
                **HONORABLE ROBERT SIMPSON,** Judge
                **HONORABLE P. KEVIN BROBSON,** Judge
                **HONORABLE ANNE E. COVEY,** Judge
                **HONORABLE CHRISTINE FIZZANO CANNON,** Judge
                **HONORABLE ELLEN CEISLER,** Judge

**OPINION BY**
**JUDGE COHN JUBELIRER[1]**                **FILED: October 31, 2018**

In *Gingrich v. Department of Transportation, Bureau of Driver Licensing*, 134 A.3d 528 (Pa. Cmwlth. 2016) (en banc), we held, premised on arguments raising issues of due process and fairness, that a delay in reporting a licensee's conviction for violating the Vehicle Code,[2] even though not attributable to the Department of Transportation, could be the basis upon which a civil license suspension appeal may be sustained, if the licensee demonstrates three factors. *Id.* at 534-35. First, the licensee must demonstrate that there was an extraordinarily extended delay in the

---

[1] This case was reassigned to the author on June 5, 2018.
[2] 75 Pa. C.S. §§ 101-9805.

reporting of the licensee's conviction. Second, the licensee must demonstrate that the licensee had no further violations of the Vehicle Code for an extended period. Third, the licensee must demonstrate that the licensee suffered prejudice as a result of the delay. Of these factors, the first, whether the non-Departmental delay constitutes an extraordinarily extended period of time, has become the focus of many appeals based on *Gingrich*, including the one before us now. Applying the *Gingrich* factors, the Court of Common Pleas of Delaware County (common pleas) sustained the appeal of Steven Middaugh (Licensee) of his one-year license suspension, which was based upon his conviction for driving under the influence (DUI). The Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (Department) has appealed common pleas' Order, arguing common pleas misapplied the first *Gingrich* factor.

It is undisputed that civil license suspensions play a vital role in protecting the safety of the traveling public by removing from the roads drivers who have violated the Vehicle Code.[3] The Department is responsible for imposing these license suspensions when it is informed that a licensee has been convicted of a qualifying offense. Section 3804(e)(1) of the Vehicle Code, 75 Pa. C.S. § 3804(e)(1); *Dep't of Transp., Bureau of Driver Licensing v. Green*, 546 A.2d 767, 769 (Pa. Cmwlth. 1988), *aff'd*, 569 A.2d 350 (Pa. 1990). When a licensee has challenged a license suspension claiming that it was not imposed timely, this Court historically overturned the suspension only when an unreasonable delay was attributable to the Department. *See, e.g.*, *Pokoy v. Dep't of Transp., Bureau of Driver Licensing*, 714 A.2d 1162, 1164 (Pa. Cmwlth. 1998) (stating that only a delay attributable to the

---

[3] Civil license suspensions are imposed for DUI and certain violations of The Controlled Substance, Drug, Device and Cosmetic Act, Act of April 14, 1972, P.L. 233, *as amended*, 35 P.S. §§ 780-101 – 780-144.

Department that causes the licensee to believe, to his or her detriment, that his or her operating privilege will not be suspended supports invalidating a license suspension). However, in *Gingrich*, this Court recognized that an extraordinary delay in imposing a suspension, though not attributable to the Department, could result in the license suspension losing its "underlying public safety purpose" and become "a punitive measure sought to be imposed too long after the fact." *Gingrich*, 134 A.3d at 535.

Here, following a hearing, common pleas applied the *Gingrich* factors and held that Licensee met the burden of proving his license suspension fell within *Gingrich.* On appeal, the Department challenges common pleas' conclusion that the 2-year, 4-month delay in the Delaware County Office of Judicial Support's (OJS) reporting the conviction to the Department constituted an "extraordinarily extended period of time" when compared to the 10-year delay at issue in *Gingrich*.[4] (Department's Brief (Br.) at 9 (quoting *Gingrich*, 134 A.3d at 534).) After review, we agree with common pleas that OJS's 2-year, 4-month delay in reporting Licensee's conviction to the Department meets the first factor of the *Gingrich* test. Therefore, we affirm common pleas' sustaining of Licensee's appeal.

## I.    Background

On September 7, 2013, Licensee was arrested for DUI in violation of Section 3802(a)(2) of the Vehicle Code, 75 Pa. C.S. § 3802(a)(2), to which he pled guilty on March 31, 20**14**. OJS, which performs the duties of the clerk of court in Delaware

---

[4] The Department does not challenge common pleas' conclusion that Licensee satisfied the other two factors of the *Gingrich* test.

County,[5] did not electronically notify the Department of Licensee's conviction until 2 years, 4 months later, on August 8, 20**16**.  By letter dated August 23, 20**16**, the Department advised Licensee that his license would be suspended for one year pursuant to Section 3804(e) of the Vehicle Code[6] based upon the March 31, 20**14** conviction.  Licensee appealed the suspension to common pleas, asserting that, pursuant to Section 6323(1)(i) of the Vehicle Code, 75 Pa. C.S. § 6323(1)(i), OJS was to notify the Department of his conviction within 10 days, but this notification

---

[5] Section 425 of the Delaware County Home Rule Charter (Charter), which was adopted on May 20, 1975, and became effective on January 1, 1976, provides that the Delaware County Council (County Council)

> shall establish an Office of Judicial Support which shall combine the offices of Clerk of Courts and Prothonotary.  Except as otherwise provided in this Charter, the Office of Judicial Support shall have all the powers and duties granted by Commonwealth law, by laws applicable to Counties of the Second Class A for Clerks of Court and Prothonotaries, by this Charter or by ordinance of Council.

Delaware Cty. Home Rule Charter § 425.  Pursuant to Section 412 of the Charter, the "offices . . . established under this Charter fall under the appointive authority of Council and include entities formerly supervised by the Board of Commissioners or formerly but no longer elected as independent offices."  Delaware Cty. Home Rule Charter § 412.  Section 408(*l*) of the Charter authorizes the County Council "[t]o appoint . . . [the] heads of departments falling under the direct supervision of the Council . . . ."  Delaware Cty. Home Rule Charter § 408(*l*).  Thus, in Delaware County, the OJS performs the duties of the county clerk of court and county prothonotary, is under the authority of the County Council, and the head of OJS is appointed by County Council.  This differs from other counties where the county clerk of court and county prothonotary are elected officials, answerable to the electorate. *See* Section 1301 of the Second Class County Code, Act of July 28, 1953, P.L. 723, 16 P.S. § 4301; Section 401 of The County Code, Act of August 9, 1955, P.L. 323, *as amended*, 16 P.S. § 401.  Whether elected or appointed, these officials' duties are outlined in Chapter 27 of the Judicial Code, 42 Pa. C.S. §§ 2701-2757, and in other statutes, including the Vehicle Code, which are applicable to OJS pursuant to Section 425 of the Charter.

[6] Section 3804(e)(1) and (2) provide, in relevant part, that "[t]he [D]epartment shall suspend the operating privilege [(license)] of an individual" for a period of "12 months for an ungraded misdemeanor or misdemeanor of the second degree" when the Department receives a certified record of a licensee's conviction for violating Section 3802 of the Vehicle Code.  75 Pa. C.S. § 3804(e)(1), (2).

4

did not occur for approximately 860 days. (Reproduced Record (R.R.) at 7a.) This delay, he argued, was "fundamentally unfair and greatly prejudicial" under the circumstances. (*Id.*)

## II. Proceedings Before Common Pleas

Common pleas held a de novo hearing on Licensee's appeal. The Department presented certified copies of Licensee's driving record and the March 31, 2014 conviction, which were admitted into evidence. The Department then rested its case.

Licensee testified and presented documentary evidence. Licensee agreed he was arrested for DUI on September 7, 2013, and pled guilty to that charge on March 31, 2014. At the time of his conviction, Licensee resided with his wife and was employed as an IT professional. (Common Pleas 1925(a) Opinion (1925(a) Op.) at 2.) By the time of the hearing, Licensee was divorced, lived alone, and was unemployed due to a disabling neurological disorder with which he was diagnosed in 2013 or 2014 and which had worsened. Licensee began receiving total disability benefits in the amount of $1621 per month in May 2016 and has no other income. Licensee's neurological disorder requires him to attend many doctors' appointments, including a monthly visit to one doctor, to which he must drive. He has no one else to drive him to those appointments, did not believe his health insurance would cover transportation, and did not have sufficient funds to use alternate transportation, such as taxis or Uber. Licensee explained he was aware of the civil license suspension when he pled guilty in March 2014, waited to receive that suspension in the mail, and had no idea why he did not receive one earlier but kept waiting. In anticipation of his license suspension, Licensee delayed purchasing a new vehicle to replace his prior vehicle, which had been wrecked in a 2013 accident.

5

Common pleas credited Licensee's testimony. (Common Pleas May 19, 2017, Findings of Fact ¶ 30.) Common pleas then applied the *Gingrich* test to the credited testimony. First, common pleas found that the 2-year, 4-month delay was an extraordinarily extended period of time for Licensee's conviction to have been not reported. Second, Licensee did not have "any further violations for a significant number of years." (*Id.* ¶ 32.) Third, common pleas found Licensee demonstrated prejudice if the license suspension was to be imposed at that late date. Pursuant to *Gingrich*, common pleas, therefore, sustained Licensee's appeal and reinstated his license.

The Department appealed, and common pleas directed it to file a Statement of Errors Complained of on Appeal (Statement) pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 1925(b).[7] In its Statement, the Department argued common pleas erred in sustaining Licensee's appeal because: it met its burden of proving Licensee's conviction of a crime that required a license suspension; the 2-year, 4-month delay was not chargeable to the Department and, therefore, did not support granting the appeal; and this delay did not qualify for relief under the *Gingrich* test.

In its responsive opinion, common pleas concluded that, because its decision was supported by *Gingrich*, the Department's first two arguments did not require a different result. Common pleas explained there was no dispute that Licensee was

---

[7] Rule 1925(b) states:

> If the judge entering the order giving rise to the notice of appeal ("judge") desires clarification of the errors complained of on appeal, the judge may enter an order directing the appellant to file of record in the trial court and serve on the judge a concise statement of the errors complained of on appeal ("Statement").

Pa.R.A.P. 1925(b).

6

convicted of a crime that required the suspension of his license. However, if *Gingrich* applied, Licensee did not have to prove that the delay was chargeable to the Department. (1925(a) Op. at 5-6.) Reviewing *Gingrich*, common pleas held it was applicable to Licensee's situation and found that the second (no further violations) and third (prejudice) factors of the *Gingrich* test were satisfied. In regard to the prejudice factor, common pleas pointed to the changes in Licensee's medical and employment situations, as well as to the fact that Licensee delayed purchasing a new vehicle while he waited to receive a notice of suspension. (*Id.* at 7.)

As to the first factor (length of the delay), common pleas rejected the Department's position that *Gingrich* was inapplicable because the length of the delay here was not the same as the 10 years in *Gingrich*. It explained the Department was relying on prior precedent, requiring that a delay be chargeable to the Department to support the grant of an appeal, (*id.* (citing *Pokoy*, 714 A.2d 1162)), rather than on *Gingrich*, which established no specific time or bright line for the length of the requisite delay. In determining whether OJS's delay in notifying the Department was an extraordinarily extended period of time, common pleas sought "guidance as to what [was] reasonable." (*Id.* at 10.) It found guidance in Section 6323(1)(i) of the Vehicle Code, which "statutorily required" OJS "to report the conviction to [the Department] 'within ten days after final judgment of conviction.'" (*Id.* (quoting 75 Pa. C.S. § 6323(1)(i)).) Common pleas concluded:

> [u]nder *Gingrich*, . . . , it is **not objectively reasonable** for the DL-21 Form to be submitted two years later when OJS is required to submit this form **within ten days** after the conviction. Using the objective standard of the ten[-]day period, a two[-]year delay would not be reasonable. How long should a licensee be expected to put his or her life on hold? . . . Because of the **inattentiveness** of [OJS], [Licensee] will suffer additional punishments . . . .
> ***

7

Regardless [of] whether [the Department] or OJS is responsible for the delay, prejudice to the licensee may result . . . . Both [the Department] and the judicial system have an obligation to provide notice of suspension in a reasonable amount of time because a licensee should not have to put his or her life on hold waiting to find out whether he or she can drive in the future . . . .

*\*\**

[The Department] seeks to punish [Licensee] two years and [four] months later because **OJS failed to perform its duty** under the law. [Common pleas] found that under these factual circumstances, [Licensee's] suspension is not in the interest of protecting the public, but rather will be an additional punishment to be imposed years later based upon a clerical error by no fault of his own. . . .

(1925(a) Op. at 10-11 (emphasis added).) For these reasons, common pleas asserted it committed no error in granting Licensee's appeal and reinstating his license.

### III. The Parties' Arguments on Appeal

On appeal,[8] the Department argues common pleas erred in sustaining the appeal because the 2-year, 4-month delay caused by OJS was not for an extraordinarily extended period of time as required by *Gingrich*. Therefore, the Department asserts, *Gingrich* is inapplicable and the general rule that only an unreasonable delay chargeable to the Department should apply. Because the delay here was not attributable to the Department, it argues common pleas should have denied Licensee's appeal. The Department argues this general rule was reaffirmed in *Gingrich*, and the extraordinary circumstances that led this Court to deviate from that rule in *Gingrich* are not present here.

---

[8] Our review of common pleas' "decision in a license suspension case is limited to determining whether [common pleas'] findings of facts are supported by competent evidence and whether [common pleas] committed an error of law or . . . abuse[d its] . . . discretion in reaching its decision." *Orloff v. Dep't of Transp., Bureau of Driver Licensing*, 912 A.2d 918, 922 n.7 (Pa. Cmwlth. 2006) (citation omitted).

8

Licensee responds that common pleas correctly found that the 2-year, 4-month delay here is the type of limited extraordinary circumstance justifying relief under *Gingrich*. Noting that the Department does not dispute that he satisfied the other two factors of the *Gingrich* test, Licensee asserts common pleas properly sustained his appeal because he met all three criteria set forth in *Gingrich*. The Department's citation to *Pokoy* and other precedent holding that only unreasonable delays chargeable to it can support the grant of an appeal, Licensee argues, is an attempt to minimize *Gingrich*'s holding that delays not attributable to the Department can be the basis of granting a licensee relief. Licensee maintains common pleas thoroughly reviewed his case, analyzed the principles set forth in *Gingrich*, and, exercising its discretion, held that Licensee's appeal should be granted. Common pleas' decision, Licensee argues, was not in error or an abuse of discretion and, therefore, should be affirmed.

## IV.   Discussion

We begin our analysis with an examination of the provisions of the Vehicle Code regarding civil license suspensions and the reporting of the convictions that lead to those suspensions. We then review the evolution of the case law regarding the treatment of delays in civil license suspension appeals, ending with this Court's recent en banc decision in *Gingrich*. Finally, we consider whether, under these factual circumstances, common pleas erred in concluding that granting Licensee relief from the delayed suspension of his license was appropriate under *Gingrich*.

### A. *The Statutory Framework*

9

We first examine the statutory framework, which informs our analysis. Section 6323(1)(i) of the Vehicle Code sets out the responsibility of the local clerk of courts to send a record of the conviction to the Department within 10 days after the conviction as follows:

> (i) **The clerk of any court** of this Commonwealth, **within ten days after final judgment of conviction or acquittal or other disposition of charges under any of the provisions of this title** or under section 13 of the act of April 14, 1972 (P.L. 233, No. 64), [*as amended*, 35 P.S. §§ 780-101 – 780-144], known as The Controlled Substance, Drug, Device and Cosmetic Act [(Drug Act)], including an adjudication of delinquency or the granting of a consent decree, **shall send to the department a record of the judgment of conviction,** acquittal or other disposition.

75 Pa. C.S. § 6323(1)(i) (emphasis added). In this case, pursuant to Section 425 of the Delaware County Home Rule Charter, OJS performs the duties of the clerk of courts. Delaware Cty. Home Rule Charter § 425. Therefore, OJS bears the statutory responsibility to send conviction records from Delaware County to the Department in accordance with the Vehicle Code. Section 6323 establishes a statutory **obligation** on the **clerk of court**, and therefore, here **OJS**, to send a record of judgment of conviction under the Vehicle Code or the Drug Act to the Department **within 10 days of the conviction**. This 10-day reporting period is evidence of the General Assembly's intent that convictions resulting in a mandatory civil license suspension be **promptly** reported to the Department.

Section 3804(e) of the Vehicle Code sets out the Department's responsibility to suspend licenses for different lengths of time, depending on the severity of the licensee's offense, and any prior offenses. Section 3804(e)(1) of the Vehicle Code states:

10

[t]he department shall suspend the operating privilege of an individual under paragraph (2) [(setting forth the periods of suspension)] upon receiving a certified record of the individual's conviction of or an adjudication of delinquency for:

    (i)    an offense under section 3802; or

    (ii)    an offense which is substantially similar to an offense enumerated in section 3802 reported to the department under Article III of the compact in section 1581 (relating to Driver's License Compact).[9]

75 Pa. C.S. § 3804(e)(1). First time DUI offenders guilty of more serious offenses, and those with prior offenses, are required to serve license suspensions of 6 months, 12 months, or 18 months, depending on their offense and the presence of aggravating circumstances, such as a minor being in the vehicle or the occurrence of an accident that resulted in property damage, injury, or death. *See* Sections 3802, 3803, and 3804(a) and (e) of the Vehicle Code, 75 Pa. C.S. §§ 3802 (describing the various types of DUI offenses), 3803 (setting forth the grades of DUI offenses), and 3804(a) and (e) (establishing the penalties for DUI offenses).[10] Under these provisions,

_____

[9] Section 1581 of the Vehicle Code, 75 Pa. C.S. § 1581.

[10] For example, a six-month suspension is imposed upon the Department's receipt of a certified record of a consent decree under the Juvenile Act, 42 Pa. C.S. §§ 6301-6375, based on a violation of Section 3802. 75 Pa. C.S. § 3804(e)(v). A 12-month license suspension is imposed for a DUI that is an ungraded misdemeanor, which includes an offender with one prior offense and who can be sentenced to a term of imprisonment for not more than 6 months, a first time DUI offender where there is an accident that causes bodily injury or death of any person or damage to a vehicle or other property, or an offender with no prior offense who violates Section 3802(c) (highest rate of alcohol - .16% or higher) or (d) (controlled substances). 75 Pa. C.S. §§ 3803(a)(1), (b)(1), (b)(2), 3804(e)(2)(i). A misdemeanor of the second degree, which includes an offender who has more than one prior offense violating Section 3802(a) (general impairment), will also result in a 12-month suspension. 75 Pa. C.S. §§ 3803(a)(2), 3804(e)(2)(i). An 18-month suspension is imposed for an offender who commits a misdemeanor of a first degree, which includes those with more than one prior offense and where there is an accident that causes bodily injury or death of any person or damage to a vehicle or other property, or has a high rate (.10% to .16%) or highest rate (16% or higher) of alcohol concentration in their blood or breath, or is a

where an offender's actions are considered more harmful to the public, whether through multiple offenses, having a higher rate of alcohol concentration, having a minor in the vehicle, or being involved in an accident causing property damage, injury or death, the offender's license suspension becomes longer in length. Through the imposition of longer suspension periods, repeat offenders and those who commit more serious offenses are kept off the roads and away from the traveling public for longer periods of time.

These two sections of the Vehicle Code impose complementary statutory obligations on the clerks of court, to send notice of conviction to the Department within 10 days, and on the Department, to suspend the license for the requisite period upon receipt of the notice of conviction. Our courts have interpreted these Vehicle Code provisions as evidencing the General Assembly's intent to "keep unsafe drivers off the highways for stated periods" of time, *Green*, 546 A.2d at 769, in order to protect "the traveling public," *Chappell v. Commonwealth*, 430 A.2d 377, 379 (Pa. Cmwlth. 1981). This intent is effectuated by suspending the licenses of dangerous drivers and doing so quickly – in temporal proximity to the offense that created the safety concern. To fulfill the General Assembly's intent, both the Department and the clerks of court must promptly perform their statutory obligations; if there is a delay by either of them, the result is the same – the unsafe driver will not be removed from the road timely.

### B. Approaches to Delayed Suspensions

When there is a delay attributable to the Department, a licensee has long been able to challenge a license suspension by proving two factors: (1) that there was an

---

minor whose alcohol concentration is .02% or higher, or the offender violates Section 3802 where a minor under the age of 18 was in the vehicle. *See* 75 Pa. C.S. §§ 3803(b)(3)-(5), 3804(e)(2)(ii).

12

unreasonable delay in imposing the suspension; and (2) the delay caused the licensee to believe that his or her license would not be suspended, upon which the licensee relied to his or her detriment. *Pokoy*, 714 A.2d at 1164. This two-factor test, initially developed by the Superior Court when it originally heard these appeals, continued to be applied by this Court after 1970. For example, in *Department of Transportation v. Hosek*, 284 A.2d 524, 525, 527 (Pa. Cmwlth. 1971), we held the court of common pleas reasonably exercised its discretion in setting aside the license revocation based on the "**egregious**" **16-month delay** and the fact that the licensee established "[h]e was clearly prejudiced by the [Department's] failure to act as the law provided." *Id.* at 527 (emphasis added).

Thus, delays attributable to the Department have long been addressed with this two-factor test. This Court has explained the reasons as being consistent with sound policy:

> Under the Vehicle Code, [the Department] is the agency made responsible for imposition of the sanctions which the law uses to keep unsafe drivers off the highways for stated periods. This court has held that a material breach by [the Department] of that responsibility will invalidate the legal effectiveness of the sanction. If [the Department] too often failed to meet the responsibility thus focused upon it, the locus of fault would be clear and executive and legislative remedies could be directed at [the Department.]

*Green*, 546 A.2d at 769.[11]

---

[11] In applying this test, we have held that delays by the Department as short as eight months were unreasonable and sufficient to sustain a license appeal. *Bennett v. Dep't of Transp., Bureau of Driver Licensing*, 642 A.2d 1139, 1141-42 (Pa. Cmwlth. 1994) (the licensee believed, based on the delay, that no license suspension would occur and relied upon that belief to his detriment by obtaining employment that required a license where previously the licensee had been unemployed).

However, the courts did not analyze delays by clerks of court in reporting convictions in the same manner as delays by the Department. Although Section 6323(1)(i) does contain a 10-day reporting requirement, there was concern that strictly enforcing this requirement by invalidating license suspensions that were not reported within 10 days would undermine public safety. This Court, in *Chappell*, therefore interpreted the Vehicle Code to **exclude** non-Departmental delays as grounds upon which a licensee could challenge a license suspension. The delay at issue in *Chappell* was **two months** long, during which time the licensee was already serving a separate license suspension. 430 A.2d at 378. We held that "the Department's power, indeed duty, to suspend [the licensee's] license for drunken driving should [not] be cancelled out by reason of a clerk of court's inattention to duty." *Id.* at 379. "We s[aw] no reason why we should visit the sins of the court clerks upon the traveling public whom the suspension was meant to protect." *Id.* We, therefore, affirmed the denial of the licensee's appeal from the suspension of his license.

Relying on *Chappell*, this Court subsequently construed the term "shall," as used in the 10-day reporting requirement, to be directory, not mandatory. *Dep't of Transp., Bureau of Driver Licensing v. Claypool*, 618 A.2d 1231, 1232-33 (Pa. Cmwlth. 1992) (concluding that Section 13(m) of the Drug Act, 35 P.S. § 780-113(m), which imposes a similar 10-day reporting period for Drug Act convictions, was directory and that the 23-day delay there would not invalidate the Department's power to suspend the license of the convicted licensee). We explained that this interpretation "protects the vehicle safety laws from vulnerability [due] to delays within a system where detection and correction of official failure would be much more difficult." *Id.* at 1233 (quoting *Green*, 546 A.2d at 769). However, we

indicated that, even though the 10-day requirement was being construed as directory, this did "not mean that it is optional – to be ignored at will." *Id.* (quoting *Pleasant Hills Borough v. Carroll*, 125 A.2d 466, 469 (Pa. Super. 1956)). A directory provision, we explained, must still be followed, but the effect of the noncompliance with that provision would not invalidate the proceedings. *Id.*

Thus, over the years, these two complementary statutory provisions, one imposing a reporting duty on the clerk of courts and one imposing a duty on the Department to suspend a driver's license, have been interpreted very differently by the Court based on a concern about public safety. Accordingly, in license suspension appeals, the Court did not consider any delay caused by an entity other than the Department, regardless of its length. *Pokoy*, 714 A.2d at 1164 (delay of nearly four years not attributable to the Department insufficient under *Green* to invalidate a license suspension); *Green*, 546 A.2d 768-69 (collecting cases applying *Chappell* to varying lengths of non-Departmental delay). However, as time has passed, technology has made it easier both to transmit the notice of convictions to the Department,[12] as well as to detect and correct any delays.

## C. Gingrich

In *Gingrich*, this Court was faced with a 10-year non-Departmental delay. The licensee in *Gingrich* was convicted of DUI in 2004, but the clerk of courts did not report that conviction to the Department until 2014, **10 years** later. The Department suspended her license in 2014 for one year based on the 2004

---

[12] For example, pursuant to Pennsylvania Rule of Criminal Procedure 771(A), Pa.R.Crim.P. 771(A), the dispositions of charges required to be transmitted to the Department by Section 6323 of the Vehicle Code now must be done electronically on a form prescribed by the Department.

conviction, and the licensee appealed. During those 10 years, the licensee had another DUI violation in 2006 and a license suspension for a chemical test refusal. Her license was restored, with the installation of an ignition interlock in 2010, and she renewed her license in 2013. Also during those 10 years, the licensee earned multiple degrees, got married, and had a daughter who, in 2014, was five years old and attended a school to which the licensee had to drive her. The licensee explained that, had she known that a suspension could still occur in 2014 based on the 2004 conviction, her decisions to get married and where her daughter attended school would have been affected. She further explained that her job as an inspector for the United States Department of Agriculture required her to drive in order to inspect processing plants, and if her suspension was not vacated, she would likely lose her job. Common pleas dismissed her appeal and upheld the license suspension, but suggested to this Court that it "clarify, if not modify, its prior holdings to take into consideration what [it] would perceive to be a **patent denial of due process**." *Gingrich*, 134 A.3d at 530 (quotation omitted) (emphasis added).

In considering the licensee's appeal, we acknowledged our precedent which interpreted Section 6323(1)(i)'s 10-day reporting requirement as directory not mandatory, and which applied the two-factor test only to delays attributable to the Department. However, we noted that the licensee, in *Gingrich*, had raised due process and fairness issues that had not been reached previously.[13] We concluded

---

[13] Previously, in *Smires v. O'Shell*, 126 A.3d 383, 386-87 (Pa. Cmwlth. 2015), a group of licensees challenged, on due process grounds, the suspension of their licenses, which had been delayed by a clerk of courts not reporting their convictions to the Department for 5 to 10 years. However, this Court did not consider those arguments due to the procedural posture of that case, which was filed as a mandamus action, indicating that the constitutional challenges should be raised in context of a statutory appeal of the license suspension. *Id.* at 394. *Gingrich* was a statutory appeal from the suspension of Gingrich's license and, therefore, the Court addressed the

16

that, while the general rule described in *Pokoy* that only delays attributable to the Department should be considered in license suspension appeals, there are extraordinary circumstances where "the suspension loses its public protection rationale and simply becomes an additional punitive measure resulting from the conviction, but imposed long after the fact." *Gingrich*, 134 A.3d at 534. In these situations, common pleas could grant relief based on a **non-Departmental** delay. We described those extraordinary circumstances as:

> [w]here . . . a licensee is able to demonstrate all of the following: a conviction that is not reported for an extraordinarily extended period of time; the licensee has [no further violations of the Vehicle Code] for an extended period; and prejudice, it may be appropriate for common pleas to grant relief.

*Id.* at 534-35. We thus applied a **three-factor** test, similar to the **two-factor** test applied to delays attributable to the Department. Both tests require the licensee to establish a delay and prejudice by that delay. However, the *Gingrich* test modified the extent of the delay, requiring the delay to be for an extraordinarily extended period of time, and added a third factor, which expressly takes into account public safety by considering whether the licensee had further violations of the Vehicle Code during the delay.

We indicated, in *Gingrich*, that this test was to be applied by courts of common pleas on a case-by-case basis to determine whether relief was appropriate. Applying this standard to the facts in *Gingrich*, we held the record established that the circumstances warranted the grant of the relief requested. In doing so, we concluded the nearly 10-year delay met the requirement that the delay be for an

---

due process and fairness claims raised in that appeal similar to those raised, but not reached, in *Smires*. *Gingrich*, 134 A.3d at 534.

extraordinarily extended period of time. *Id.* at 535 n.7. Although not expressly stated in *Gingrich*, implicit in our holding was a due process consideration when a license suspension no longer serves to protect the public but is an additional punishment imposed too long after the licensee's conviction.

Since *Gingrich*, the courts of common pleas and this Court have applied the *Gingrich* factors to various circumstances and time periods. As this case law has developed, the courts have carefully evaluated whether periods of delay shorter than 10 years can qualify as extraordinarily extended periods of time. For example, this Court has affirmed decisions of the courts of common pleas which held that non-Departmental delays of 9 years, 7 years and 10 months, 2 years and 7 months, and 2 years and 4 months can be considered extraordinarily extended periods of time to meet *Gingrich*'s first factor, where the other *Gingrich* factors were also satisfied.[14] In those cases, this Court concluded the suspensions had lost their public purpose and it was appropriate for the courts of common pleas to have granted relief. However, we also have reversed the grant of a license suspension appeal, holding

---

[14] *See DeGrossi v. Dep't of Transp., Bureau of Driver Licensing*, 174 A.3d 1187 (Pa. Cmwlth. 2017) (2 years and 7 months); *Gifford v. Dep't of Transp., Bureau of Driver Licensing*, 172 A.3d 727 (Pa. Cmwlth. 2017) (2 years and 7 months), *petition for allowance of appeal granted*, (Pa., No. 797 MAL 2017, filed Apr. 25, 2018); *Capizzi v. Dep't of Transp., Bureau of Driver Licensing*, 141 A.3d 635 (Pa. Cmwlth. 2016) (7 years and 10 months); *Quatrini v. Dep't of Transp., Bureau of Driver Licensing* (Pa. Cmwlth., No. 427 C.D. 2017, filed Nov. 30, 2017) (2 years and 4 months); *Eckenrode v. Dep't of Transp., Bureau of Driver Licensing* (Pa. Cmwlth., No. 168 C.D. 2015, filed July 14, 2016) (9 years); *Orwig v. Dep't of Transp., Bureau of Driver Licensing* (Pa. Cmwlth., No. 286 C.D. 2015, filed June 3, 2016) (10 years). Unreported decisions of this Court may be cited for their persuasive value. Section 414(a) of the Internal Operating Procedures of the Commonwealth Court, 210 Pa. Code § 69.414(a).

18

that a non-Departmental delay of five months was not an extraordinarily extended period of time and *Gingrich* was inapplicable.[15]

### D. Application of Gingrich to Licensee's Appeal

The Department's challenge to common pleas' determination that 2 years and 4 months could meet the *Gingrich* standard reflects its position that *Gingrich* should be narrowly applied only to facts that closely match those at issue in that case. The Department maintains that "[e]xcept . . . [in] the '**limited extraordinary circumstances outlined**' in *Gingrich*," a non-Departmental delay is not grounds for granting a license suspension appeal. (Department's Br. at 23 (emphasis added).) In so arguing, the Department apparently asserts that the period of time against which **all** delays should be measured is based on *Gingrich*, which had a delay of 10 years.

In determining whether the delay here met the first factor in *Gingrich*, common pleas looked to Section 6323(1)(i) of the Vehicle Code for guidance as to what a reasonable period of time would be for OJS to report a conviction to the Department and whether the report here fell within that period. It concluded that when measured against the **objective** 10-day reporting requirement found in that section of the Vehicle Code, the 2-year, 4-month delay was objectively unreasonable

---

[15] *Nercesian v. Dep't of Transp., Bureau of Driver Licensing* (Pa. Cmwlth., No. 1795 C.D. 2016, filed June 12, 2017). Additionally, this Court has held that even where there was a delay in reporting a conviction to the Department, *Gingrich* is not applicable if the licensee does not prove the other two factors of that test. *See Janes v. Dep't of Transp., Bureau of Driver Licensing* (Pa. Cmwlth., No. 369 C.D. 2017, filed Oct. 24, 2017) (licensee had an intervening violation of the Vehicle Code during the approximately one-year, six-month delay in reporting his first conviction for violating the Vehicle Code and, therefore, the public protection purpose was still met by the suspension of his license); *Currie v. Dep't of Transp., Bureau of Driver Licensing* (Pa. Cmwlth., No. 1819 C.D. 2015, filed Apr. 22, 2016) (licensee did not establish he was prejudiced by the delay and, therefore, the Court did not reach the other factors).

19

and met the *Gingrich* test. Because judicial opinions should be tethered to the statutes they interpret and apply, it is appropriate to consider the Vehicle Code's 10-day reporting requirement in determining whether a non-Departmental delay qualifies as an extraordinarily extended period of time for *Gingrich* purposes.

The Department argues Section 6323(1)(i) should not be considered **at all** due to the public safety reasons expressed in *Chappell*. We disagree with the Department for two reasons. First, we note that what began as a **2-month** delay in *Chappell*, and a **14-month** delay in *Green*, has evolved into sanctioned periods of delay of **17 months**, **2 years**, **4 years**, and **7 years**, with no recourse to licensees whose license suspensions were delayed by a non-Departmental "inattention to duty." *Chappell*, 430 A.2d at 379; *see Pokoy*, 714 A.2d at 1164 (4-year delay); *Green*, 546 A.2d 768-69 (collecting cases applying *Chappell* to varying lengths of non-Departmental delay); *Fruewirth v. Dep't of Transp., Bureau of Driver Licensing* (Pa. Cmwlth., No. 104 C.D. 2012, filed Sept. 7, 2012), slip op. at 2, 7 (7-year delay).

Second, construing the 10-day period as directory does not mean that we should not consider it at all and give **no effect** to Section 6323(1)(i). The effect of holding that a statutory "provision is directory rather than mandatory[] **does not mean that it is optional – to be ignored at will**. Both mandatory and directory provisions of the legislature are meant to be followed." *Gingrich*, 134 A.3d at 533 (emphasis added) (quotation omitted). While the failure to follow a directory provision does not render the proceedings void, *id.*, it does not require the Court to totally disregard that provision. The General Assembly has imposed a time frame during which convictions are to be reported to the Department and, if Section 6323(1)(i) is ignored, as the Department urges, we essentially rewrite the Vehicle Code, which we may not do. *Commonwealth v. Scolieri*, 813 A.2d 672, 678 (Pa.

20

2002) (stating "appellate courts should [not] act as an editor for the General Assembly"). Accordingly, this 10-day period should not be ignored, as it reflects the General Assembly's intent, expressed through this statutory requirement, that convictions be promptly reported to the Department to allow for the timely removal of an unsafe driver from the road. The 10-day period provides an objective criterion in determining whether the first *Gingrich* factor is met. That is what common pleas perceptively did in this case.

In *Green*, this Court assumed that allowing the sanction of a license suspension to be "dependent upon scores of court clerks and hundreds of functionaries within the minor judiciary" would result in these laws becoming vulnerable. 546 A.2d at 769. We note that these delays in notifying the Department continue to persist and appear to have lengthened, without remedy to the licensee or consequence to those responsible for the delays. If the public safety is protected when unsafe drivers are kept off the road and sanctioned by the loss of their driving privileges, then timely notification to the Department of convictions, rather than excusing untimely notifications, will better protect the public. Thus, detecting and correcting the court clerks' "inattention to duty," *Chappell*, 430 A.2d at 379, rather than allowing it to continue unabated, will better satisfy the public purpose of removing unsafe drivers from the roads as soon as possible. The General Assembly recognized this by enacting a 10-day reporting requirement.[16]

The General Assembly also has specified the periods of time during which licensees can anticipate having their licenses suspended based on convictions for

---

[16] An added benefit to considering the 10-day reporting period is that the longer the delay between the conviction and the license suspension, the more likely the licensee will have changed his or her circumstances and would suffer prejudice. Thus, requiring the timely reporting of convictions to the Department reduces the chance that a licensee would experience **atypical** prejudice as a result of a delayed license suspension.

21

violating the Vehicle Code. Those periods, 6 months, 12 months, and 18 months, are set forth in Section 3804(e) of the Vehicle Code. As previously discussed, the length of suspension increases based on the seriousness of the underlying offense, the presence of aggravating circumstances, and whether the offender was a repeat offender. *See* 75 Pa. C.S. §§ 3802, 3803, 3804(a) and (e). The imposition of longer periods of suspension for repeat offenders and those who commit more serious offenses promote public safety by keeping those who pose a greater risk to the safety of the traveling public off the roads for longer periods of time. When common pleas here questioned "[h]ow long should a licensee be expected to put his or her life on hold" waiting for the imposition of a license suspension, (1925(a) Op. at 10), we believe it would not be extraordinary for that period to be the anticipated period of suspension. A licensee should be aware during that time period that a license suspension is forthcoming. Like the 10-day reporting requirement, the length of the suspension that would be imposed on the licensee is an objective period of time during which a licensee would expect to have a license suspension.

Applying these two objective periods of time set forth by the General Assembly, we conclude that if a clerk of court reports a conviction to the Department within the applicable period of the license suspension plus 10 days, such delay, as a matter of law, cannot be an extraordinarily extended period of time sufficient to meet the first *Gingrich* factor.[17] However, where the delay exceeds that period, and where the remaining *Gingrich* factors are satisfied, a court of common pleas can find that relief is appropriate under *Gingrich*. When applied here, common pleas did not err

---

[17] We acknowledge that, in *Gingrich*, the Court declined to set forth a bright line for what constituted an extraordinarily extended period of time. 134 A.3d at 535 & n.7. But since that decision, the need for consistency and certainty in *Gingrich*'s application has resulted in our adoption of this objective standard.

in finding that the 2-year and 4-month delay was an extraordinarily extended period of time because it exceeded the 1-year license suspension the Department sought to impose on Licensee plus 10 days. For these reasons, common pleas could find that the delay here met the first *Gingrich* factor.

We are not unmindful of the Department's concern that considering non-Departmental delays and the 10-day reporting requirement in license suspension appeals will hinder its ability to protect the public through the imposition of civil license suspensions. This concern is addressed by specifically considering whether there remains a public protection purpose for upholding the suspension based, in part, on whether the licensee has had additional violations of the Vehicle Code since the relevant conviction. Importantly, however, when there is a delay in reporting a conviction to the Department, the unsafe driver is **not** being taken off the road. The General Assembly enacted two complementary statutory provisions to take unsafe drivers off the road expeditiously and deter future misconduct. The 10-day reporting requirement is imposed on the clerks of court to report the conviction before the Department is able to suspend the license for the applicable statutory time period. These statutory mechanisms must work together to **remove unsafe drivers from the road as soon as possible after the conviction**, for varying periods of time based on the nature of the offenses and aggravating factors. The courts have treated the two types of delays differently, although the result of a delay is the same regardless of its cause. Sanctioning lengthy delays in reporting, and the concomitant lengthy delay in suspending the license of an unsafe driver, frustrates the public safety purpose our precedent found important, thus jeopardizing "the traveling public whom the suspension was meant to protect." *Chappell*, 430 A.2d at 379.

23

Finally, we note that although our analysis has primarily focused on the impact untimely suspensions have on the public safety purpose of license suspensions, the application of these criteria, the 10-day reporting requirement and the length of the suspension sought to be imposed, also address the due process and fairness concerns raised in *Gingrich*. The statutory provisions provide objective criteria against which all courts of common pleas can measure a particular delay in the reporting of a licensee's conviction to the Department. Applying these objective criteria to determine if the first *Gingrich* factor is met, and determining whether the other two *Gingrich* factors are satisfied, balances the General Assembly's intent that unsafe drivers be timely removed from the road following a conviction and the public safety purpose of license suspensions, while also being sensitive to the due process concerns that may arise when a delay reaches the point where the license suspension has lost its public safety purpose and has become an additional punishment imposed too long after the fact.

## V.    Conclusion

Applying the *Gingrich* factors, as now clarified, to this matter, we agree with common pleas that "under these factual circumstances, [Licensee's] suspension is not in the interest of protecting the public, but rather will be an additional punishment to be imposed years later." (1925(a) Op. at 11.)

Accordingly, we affirm.

_____
**RENÉE COHN JUBELIRER,** Judge

24

Judge Simpson dissents.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Stephen Middaugh            :
                                       :
                v.            :    No. 815 C.D. 2017
                                         :
Commonwealth of Pennsylvania,  :
Department of Transportation,    :
Bureau of Driver Licensing,      :
                 Appellant   :

## O R D E R

**NOW**, October 31, 2018, the Order of the Court of Common Pleas of Delaware County, entered in the above-captioned matter, is **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER,** Judge

Stephen Middaugh                          :
                                          :
                    v.                    :
                                          :
Commonwealth of Pennsylvania,             :
Department of Transportation,             :
Bureau of Driver Licensing,               :     No. 815 C.D. 2017
                    Appellant             :     Argued: March 7, 2018


BEFORE:     HONORABLE MARY HANNAH LEAVITT, President Judge
            HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE ROBERT SIMPSON, Judge
            HONORABLE P. KEVIN BROBSON, Judge
            HONORABLE ANNE E. COVEY, Judge
            HONORABLE CHRISTINE FIZZANO CANNON, Judge
            HONORABLE ELLEN CEISLER, Judge


CONCURRING AND DISSENTING OPINION
BY JUDGE COVEY                              FILED: October 31, 2018


I agree with the Majority's conclusion that the Delaware County Common Pleas Court's (trial court) determination, that Stephen Middaugh's (Licensee) suspension is not in the interest of protecting the public, but rather is an additional punishment because of the delay, should be affirmed. I also concur that the suspension time and the 10-day reporting requirement are to be a **consideration** in determining an unreasonable length of a non-departmental delay of a license suspension notice. However, while the Majority states that it does not establish a bright line test for when an extraordinarily extended delay occurs, it does rule that any delay **less than** the total of the suspension time plus 10 days "**cannot** be an extraordinarily extended period of time to meet the first *Gingrich* factor." Majority

Op. at 23 (emphasis added). This bright line standard causes my concern and disagreement because it will result in unfairness and an unequal application of the law for similarly situated licensees.

By making the above ruling, the Majority has unfairly prejudiced the licensee who receives his suspension after his suspension time lapsed, but before the additional 10 days has run, or anytime close thereto but before the actual suspension time plus 10 days has expired. In addition, although the Majority acknowledges "the need for consistency and certainty in *Gingrich's* application," the "adoption of this objective standard" has the result of treating the above-described licensees differently with no "consistency and certainty." Majority Op. at 23 n.17. In addition, the effect of the Majority is to precipitate litigation over this issue as anyone who receives his/her suspension after the suspension time plus 10 days will surely appeal as under the new standard one can argue that he/she has met the extraordinarily extended time period.

For the following reasons, I suggest that this Court, in revisiting *Gingrich*, abandon *Gingrich*. First, I find it troublesome that the Majority still refers to the first *Gingrich* factor as an **extraordinarily extended** time period, when under the new standard a delay of only 190 days meets the first factor. Second, because prejudice is present in most, if not all cases, and occurs to any person who currently has a license and suddenly loses it, I believe the *Gingrich* prejudice factor should be abolished as it lacks any significance as a consideration. In essence, a license suspension is per se prejudicial and, therefore, prejudice is a non-element. Further, prejudice is the only *Gingrich* requirement with a subjective standard, *i.e.*, what constitutes prejudice varies from licensee to licensee, as opposed to an objective basis. Prejudice plays no role in determining whether the length of delay loses its safety purpose. Accordingly, I believe this Court should cease relying upon the *Gingrich* exception and discontinue using the factors as identified therein.

While I agree with the Majority's well-written opinion explaining the use of the suspension time and the 10-day reporting requirement as a consideration, I would avoid a bright line standard. In order to end the varied applications of *Gingrich* and its factors going forward, rather than look to *Gingrich* when faced with a non-departmental delay in the notice of a license suspension, the trial courts should consider the following: (1) the suspension time and the 10-day reporting requirement when evaluating the length of the delay; and (2) whether the licensee has been without further incident since his current offense, and the existence of any prior offense(s) and, if so, the length of time before his current offense. In applying these objective considerations, the focus is once again on protecting the public, as that is the purpose of the license suspension.

The weighing of the above considerations is best illustrated by examples. For instance, a licensee who appears before the trial court who has received a 12-month license suspension notice one year and five days after his conviction (due to a non-departmental delay), who had no prior convictions/incidents and has had no incidents since the relative conviction, should not be penalized by the fact that his full suspension time plus 10-days has not yet elapsed, but rather should get the benefit of the above considerations and have his license suspension vacated. However, a licensee who receives his 12-month license suspension notice 18 months after his conviction (due to a non-departmental delay), who had an incident during those 18 months, should not get his license suspension vacated merely because a specific amount of time has elapsed. Similarly, a licensee who receives his 12-month license suspension notice 18 months after his conviction (due to a non-departmental delay), who had a conviction 6 months before the relative conviction and no incident after the relative conviction, should not get his license suspension vacated merely because a specific amount of time has elapsed. Because "[i]t is well settled in Pennsylvania that driving is a privilege" not a right, and the obvious public safety concerns are

clearly demonstrated in the last two examples, the trial court, as fact-finder, should weigh the evidence presented within the context of the two objective factors while being mindful that the goal is public safety. *Marchese v. Commonwealth*, 169 A.3d 733, 740 (Pa. Cmwlth. 2017).

For all of the above reasons, while I agree with the outcome and most of the analysis, I respectfully dissent from the Majority as written.


_____
ANNE E. COVEY, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Stephen Middaugh                :
                                        :
    v.                       :
                                        :  No. 815 C.D. 2017
Commonwealth of Pennsylvania,    :  ARGUED: March 7, 2018
Department of Transportation,     :
Bureau of Driver Licensing,       :
              Appellant       :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE ROBERT SIMPSON, Judge
               HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge
               HONORABLE ELLEN CEISLER, Judge

DISSENTING OPINION
BY JUDGE CEISLER                           FILED: October 31, 2018

Because I believe this Court should abrogate *Gingrich v. Department of Transportation, Bureau of Driver Licensing*, 134 A.3d 528 (Pa. Cmwlth. 2016) (*en banc*), and I would reverse the Trial Court's decision, I respectfully dissent.

The Majority's decision in this case has considerably undermined *Gingrich*'s intended holding and application. In *Gingrich*, our Court created a narrow exception to the general rule that administrative delays not attributable to the Department of Transportation, Bureau of Driver Licensing (Department), are insufficient to invalidate a license suspension. We recognized, however, that "there may be *limited extraordinary circumstances* where the suspension loses its public protection rationale and simply becomes an additional punitive measure resulting from the conviction, but imposed long after the fact." 134 A.3d at 534 (both emphases added).

The *Gingrich* Court expressly declined to establish a bright-line rule for when an administrative delay becomes "extraordinary." *Id.* at 534-35 & n.7. However, in the two years since the *Gingrich* decision, our Court has effectively reduced the "extraordinary delay" requirement from 10 years to 2 years,[1] thus stretching *Gingrich* so far that the "exception" is close to becoming the rule.

Like my learned colleague Judge Covey, I disagree with the Majority's pronouncement that any reporting delay less than the licensee's total suspension time plus 10 days "cannot be an extraordinarily extended period of time" under *Gingrich*. *Middaugh v. Dep't of Transp., Bureau of Driver Licensing*, __ A.3d __, __, (Pa. Cmwlth., No. 815 C.D. 2017, filed October 31, 2018) (*en banc*), slip op. at 23. After stating that it did not wish to create a bright-line rule, the Majority essentially created a bright-line rule – one whose application, like the rule in *Gingrich*, will lead to inconsistent results in future cases.

Moreover, I believe that county court clerks should be accountable for fulfilling their statutorily required reporting obligation. As the Majority recognizes, Section 6323(1)(i) of the Vehicle Code "establishes a statutory **obligation** on the **clerk of court** . . . to send a record of judgment of conviction under the Vehicle Code . . . to [the Department] **within 10 days of the conviction**." *Middaugh*, __ A.3d at __, slip op. at 10-11. The Majority goes on to state that the "**10-day reporting period is evidence of the General Assembly's intent** that convictions resulting in a mandatory civil license suspension be **promptly** reported to the Department." *Id.*, __ A.3d at __, slip op. at 11 (first emphasis added). Yet, the Majority nonetheless concludes that compliance with the 10-day reporting requirement is merely a *factor* to be considered when determining whether the delay

---

[1] *See Middaugh v. Dep't of Transp., Bureau of Driver Licensing*, __ A.3d __, __, (Pa. Cmwlth., No. 815 C.D. 2017, filed October 31, 2018) (*en banc*), slip op. at 18-19 & n.13.

was for an extraordinarily extended period of time. *Id.*, __ A.3d at __, slip op. at 21. In my view, this conclusion renders the compulsory language of Section 6323(1)(i) meaningless and allows licensees to unfairly benefit from county court clerks' failure to comply with their statutory obligation. It also keeps licensees on the roadways despite their DUI convictions, which contradicts the public safety purpose that license suspensions are intended to serve. That cannot be the result our legislature intended.

As the recent precedent on this issue has shown, whether an individual's license suspension is sustained depends, in large part, on the caprice, efficiency, and attitude of county court clerks throughout the Commonwealth. Lack of accountability and arbitrary reporting practices by county court clerks not only implicates fundamental notions of fairness, but also lends itself to potential mischief and misconduct. Licensees should not be permitted to avoid the consequences of their actions that caused them to lose their operating privileges simply because their suspensions were delayed through no fault of the Department. Otherwise, licensees who have not received notice of their suspensions could choose to gamble on whether their suspensions will slip through the cracks, rather than take the initiative to inquire into their license statuses. Licensees convicted of DUI can always contact the Department to ascertain the status of their licenses if they are concerned about the delay, as Stephen Middaugh (Licensee) was in this case.[2]

---

[2] Here, Licensee was aware at the time of his DUI conviction that his license would be suspended, and he had no reason to believe the suspension would not be imposed. *See* Reproduced Record at 41a. Licensee testified: "I had no idea what happened. I kept waiting and waiting, and nothing happened. I didn't even buy a car for a while, waiting for the suspension, but I had no idea what happened." *Id.* at 42a. If Licensee was questioning the timing of his suspension, he easily could have contacted the Department and so inquired.

EC - 3

Furthermore, the result in this and similar post-*Gingrich* cases raises equal protection concerns, because licensees whose DUI convictions are timely reported will have their licenses suspended, but licensees whose conviction reports are delayed will have their suspensions vacated. In essence, similarly situated licensees are being treated differently for no reason other than whether the county court clerks complied with their statutory obligation to report their convictions to the Department within 10 days.

Because the *Gingrich* exception has been stretched beyond recognition and has created inconsistent results, I strongly believe this Court should abrogate *Gingrich*. By doing so, we would be required to apply our established pre-*Gingrich* precedent, which holds that in order to challenge an unreasonable delay between a licensee's conviction and notice of suspension, the delay must be attributable to the Department. *See, e.g., Pokoy v. Dep't of Transp., Bureau of Driver Licensing*, 714 A.2d 1162 (Pa. Cmwlth. 1998). The *Pokoy* decision has not been abrogated or reversed and remains good law. Because there was no delay attributable to the Department in this case, I would reverse the Trial Court's decision.

_____
ELLEN CEISLER, Judge