# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Brandon Cantamaglia | : | |
| | : | |
| v. | : | No. 1212 C.D. 2017 |
| | : | Submitted: November 9, 2018 |
| Commonwealth of Pennsylvania, | : | |
| Department of Transportation, | : | |
| Bureau of Driver Licensing, | : | |
| Appellant | : | |

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
HONORABLE ANNE E. COVEY, Judge
HONORABLE ELLEN CEISLER, Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**                    **FILED:  March 28, 2019**

The Commonwealth of Pennsylvania, Department of Transportation (Department), Bureau of Driver Licensing (Bureau), appeals from an order of the Court of Common Pleas of Montgomery County (trial court), dated August 11, 2017, sustaining the appeal of Brandon Cantamaglia (Licensee) and reinstating Licensee's operating privilege.[1]  We reverse the trial court's order and reinstate the suspension.

On August 8, 2016, before the Montgomery County Juvenile Court (juvenile court), Licensee stipulated to a violation of Section 3733 of the Vehicle Code, 75 Pa. C.S. § 3733, pertaining to fleeing or attempting to elude a police

---

[1] By order dated February 9, 2018, this Court precluded Licensee from filing a brief due to Licensee's failure to conform to this Court's earlier order directing Licensee to do so.

officer, based on an incident that occurred on July 27, 2015. As a result, the juvenile court adjudicated Licensee delinquent. As a civil collateral consequence of that adjudication, Section 1532(b) of the Vehicle Code, 75 Pa. C.S. § 1532(b), pertaining to suspension of operating privilege, requires that the Bureau "suspend the operating privilege of any driver for [twelve] months upon receiving a certified record of . . . an adjudication of delinquency with respect to [S]ection 3733." On March 1, 2017—almost seven months after Licensee's adjudication of delinquency—the Bureau received a report, in the form of the Department's Form DL-119 (DL-119), indicating Licensee's adjudication of delinquency. By notice with a mailing date of March 13, 2017, the Bureau imposed a one-year suspension of Licensee's operating privilege. Licensee appealed this notice to the trial court, and the trial court held a *de novo* hearing on August 11, 2017.

At the hearing, the trial court admitted into the record the following documents offered by the Bureau: (1) a letter addressed to Licensee giving written notice of the suspension of his operating privilege; (2) the DL-119; and (3) Licensee's driving record. Thereafter, Licensee and his mother, Karen Cantamaglia, testified about several changes in Licensee's life circumstances that occurred after the violation. (Reproduced Record (R.R.) at 26a-27a, 31a-32a.) They further testified that, since the violation, Licensee became the father of two children and works multiple jobs, some of which require driving, to support his family. (*Id.* at 28a-35a.) During Licensee's testimony, he conceded (1) that he committed the violation for which he received his suspension, (2) that he admitted to the violation before the juvenile court on April 11, 2016, and (3) that the juvenile court ultimately "convicted" him of the violation on August 8, 2016. (*Id.* at 36a-39a.) He stated that

2

he did not learn that the Bureau sought to suspend his operating privilege until he received the notice with a mailing date of March 13, 2017. (*Id.* at 38a.)

At the conclusion of the hearing, the trial court noted Licensee's minor status at the time of the violation and the prompt remedial steps Licensee took after the violation, but the trial court also stated that it would base its decision not merely on facts sympathetic to Licensee but "on the facts and the law." (*Id.* at 47a-48a.) Ultimately, by its order dated August 11, 2017, the trial court sustained Licensee's appeal and rescinded the suspension of his operating privilege. (*Id.* at 58a.) The Bureau then filed the instant appeal, after which the trial court issued an opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), confessing that it had erred in sustaining Licensee's appeal and suggesting that this Court should reverse the trial court's earlier order. In its Rule 1925(a) opinion, the trial court did not specifically state its initial reasons for sustaining Licensee's appeal, but its reasons appear to be twofold—(1) the Bureau failed to prove the underlying adjudication and (2) Licensee was prejudiced by the delay in reporting. In explaining the reasons for its error, the trial court acknowledged that Licensee's testimony sufficiently proved the existence of his adjudication of delinquency and reasoned that the delayed transmission of the DL-119 to the Bureau should not invalidate Licensee's suspension because, in this case, the delay persisted only for months rather than for several years, as in cases where this Court has previously invalidated suspensions due to delayed reporting. The trial court concluded that, because the delay in this case was not extraordinary, the degree to which the delay actually prejudiced Licensee is irrelevant.

3

On appeal,[2] the Bureau agrees with the trial court's Rule 1925(a) opinion and argues that the trial court erred in sustaining Licensee's appeal. First, the Bureau argues that it met its burden of proof with respect to the existence of a conviction sufficient to support the suspension. Second, the Bureau argues that the delay in certifying Licensee's adjudication as delinquent was not so extraordinary as to support the invalidation of Licensee's suspension. After analyzing both issues, we agree.

First, the Bureau argues that it met its burden of proof with respect to the existence of the underlying adjudication because it introduced the DL-119 (R.R. at 53a) into evidence at the hearing, and Licensee did not rebut the prima facie case created by that introduction. Licensee argued at the hearing before the trial court that the Bureau failed to prove the existence of the underlying adjudication, because the DL-119 contained in the record does not have the order of the juvenile court attached, despite language in the DL-119 requesting that the juvenile court order be attached. (*Id*. at 40a-41a, 46a-47a.) In other words, Licensee essentially argued before the trial court that the absence of the juvenile court order in the record rendered the DL-119 incomplete and inadequate for purposes of establishing his adjudication of delinquency.

We note that introduction into evidence of an official record of conviction describing the offense of which a licensee was convicted creates a prima facie case for the existence of the conviction described in the record. *Dick v. Dep't of Transp., Bureau of Driver Licensing*, 3 A.3d 703, 707 (Pa. Cmwlth.), *appeal*

[2] This Court's review of a trial court's order in an appeal from a driver's license suspension is limited to determining whether the trial court's findings are supported by competent evidence and whether the trial court committed an error of law or an abuse of discretion. *Cesare v. Dep't of Transp., Bureau of Driver Licensing*, 16 A.3d 545, 548 n.6 (Pa. Cmwlth.), *appeal denied*, 23 A.3d 1057 (Pa. 2011).

*denied* 14 A.3d 829 (Pa. 2010); *Glidden v. Dep't of Transp., Bureau of Driver Licensing*, 962 A.2d 9, 12-13 (Pa. Cmwlth. 2008); *Roselle v. Dep't of Transp., Bureau of Driver Licensing*, 865 A.2d 308, 313 (Pa. Cmwlth. 2005); *see also Mishler v. Dep't of Transp.*, 519 A.2d 565, 566-67 (Pa. Cmwlth. 1986) (noting, in context of conviction records sent to Department, legal presumption that clerks of courts and other public officials act pursuant to proper authority and take all steps necessary to give validity to their official acts). Once the Bureau makes such a prima facie case, the burden of proof shifts, and, if the licensee does not present clear and convincing evidence that the conviction never occurred, the Bureau will have satisfied its burden of proof as to the existence of the conviction necessary to support the suspension. *Dick*, 3 A.3d at 707; *Glidden*, 962 A.2d at 13; *Roselle*, 865 A.2d at 313.

In this case, the Bureau's submission into evidence of the DL-119 sufficiently proved the existence of the adjudication necessary to support the suspension the Bureau imposed. Notwithstanding the absence of the juvenile court order,[3] the DL-119 itself sufficiently and accurately described Licensee's adjudication of delinquency and, thus, created a prima facie case for the existence of the adjudication. Licensee did not challenge the accuracy of the DL-119. Instead, he testified that he admitted the violation before the juvenile court and was, in fact,

---

[3] The portion of the DL-119 titled "Order of Court" includes the words "PLEASE ATTACH ORDER"; no court order is attached to the DL-119 in the record of this proceeding. (R.R. at 53a.) The Bureau, in its brief, suggests that the juvenile court order *may* have been attached to the version of the DL-119 electronically transmitted to the Bureau from the clerk of courts. Considering that the Bureau actually received the DL-119, we fail to understand the Bureau's equivocation on the question of whether it also received the order of delinquency. Nonetheless, as noted above, the DL-119 does not mandate attachment of the order, and, therefore, its absence in the record does not diminish the evidentiary weight of the DL-119 for purposes of the Bureau's prima facie case.

5

convicted. We, therefore, conclude that the Bureau carried its burden to prove the existence of the underlying adjudication necessary to support the suspension and that Licensee failed to present clear and convincing evidence to the contrary.

Second, the Bureau argues that the delay in transmission of the certified conviction record to the Bureau was not long enough to constitute an extraordinary circumstance that can support the invalidation of Licensee's suspension. Licensee argued at the hearing before the trial court that the delay in certification, combined with Licensee's reliance on that delay, should invalidate the suspension. (R.R. at 41a-42a.) Regarding the delay, this Court's recent decision in *Middaugh v. Department of Transportation, Bureau of Driver Licensing*, 196 A.3d 1073 (Pa. Cmwlth. 2018) (en banc), is controlling. *Middaugh* involved an appeal of a suspension of operating privilege. The licensee argued that the Court of Common Pleas of Delaware County should have sustained his appeal because, following the licensee's conviction, the entity responsible for reporting that conviction to the Bureau did not do so until two years and four months after the conviction. Section 6323(1)(i) of the Vehicle Code, 75 Pa. C.S. § 6323(1)(i), requires the clerk of court or other responsible party to report such convictions to the Bureau within ten days. As we explained in *Middaugh*, where the Department itself is not the cause of the delay in transmission, the effect of the delay upon the licensee's suspension appeal must be analyzed under the test set forth in *Gingrich v. Department of Transportation, Bureau of Driver Licensing*, 134 A.3d 528 (Pa. Cmwlth. 2016) (en banc). *Middaugh*, 196 A.3d at 1086-87. Under *Gingrich*, a trial court may invalidate a suspension based on a reporting delay only if the licensee can demonstrate three prerequisite factors: (1) that the delay persisted for an "extraordinarily extended period of time," (2) that the licensee had no further

6

violations of the Vehicle Code[4] for a significant period, and (3) that the licensee suffered prejudice because of the delay. *Id*. at 1074 (quoting *Gingrich*, 134 A.3d at 534). Importantly for the instant case, the Court in *Middaugh* clarified the appropriate analysis of the first *Gingrich* factor as follows: "We conclude that if a clerk of court reports a conviction to the Department within the applicable period of the license suspension plus [ten] days, such delay, as a matter of law, cannot be an extraordinarily extended period of time sufficient to meet the first *Gingrich* factor." *Id*. at 1086.

Here, the delay of nearly seven months between Licensee's adjudication of delinquency and the transmission of the DL-119 to the Bureau, though possibly prejudicial to Licensee, was less than the period of Licensee's suspension (one year) plus ten days, so the delay in this case (which was not attributable to the Department) cannot support the invalidation of Licensee's suspension. Accordingly, because Licensee did not satisfy the first factor in the test from *Gingrich*, we need not address whether Licensee had further violations of the Vehicle Code during the delay or whether the delay was actually prejudicial to Licensee. The trial court, therefore, erred in its order invalidating Licensee's suspension.

Accordingly, we will reverse the trial court's order.

_____
P. KEVIN BROBSON, Judge

---

[4] 75 Pa. C.S. §§ 101-9805.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Brandon Cantamaglia | : | |
| | : | |
| v. | : | No. 1212 C.D. 2017 |
| | : | |
| Commonwealth of Pennsylvania, | : | |
| Department of Transportation, | : | |
| Bureau of Driver Licensing, | : | |
| Appellant | : | |

## **O R D E R**

AND NOW, this 28th day of March, 2019, the order of the Court of Common Pleas of Montgomery County, dated August 11, 2017, is REVERSED, and the suspension of Brandon Cantamaglia's operating privilege is REINSTATED.

P. KEVIN BROBSON, Judge